# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| AMERICAN TIBETAN HEALTH INSTITUTE, INC., a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> KAM NG, an individual, C&L INTERNATIONAL TRADING INC., a New York corporation, KANG LI TRADING INC., a New York corporation, and K&C INTERNATIONAL TRADING INC., a New York corporation, <br><br> Defendants. | Case No.:  13cv2763HB <br> ECF Case <br><br> *EX PARTE* **APPLICATION AND MEMORANDUM IN SUPPORT OF** *EX PARTE* **APPLICATION FOR TEMPORARY RESTRAINING ORDER, SEIZURE ORDER, AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION** |

## *EX PARTE* APPLICATION AND MEMORANDUM IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

Phillip Abramowitz, Esq.
KLOSS, STENGER & LOTEMPIO
*Attorneys for Plaintiff,*
*American Tibetan Health Institute, Inc.*
69 Delaware Avenue, Suite 1003
Buffalo, New York 14202
Telephone: (716) 853-1111
Email: office@klosslaw.com

David W. Kloss, Esq.
KLOSS, STENGER & LOTEMPIO
69 Delaware Avenue, Suite 1003
Buffalo, New York 14202
Telephone: (716) 853-1111

Email: dwkloss@klosslaw.com

Of Counsel to:

Otto O. Lee
INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113
Telephone: (408) 286-8933
Facsimile: (408) 286-8932

# TABLE OF CONTENTS

I.    RELIEF REQUESTED.................................................................................1

II.   PRELIMINARY STATEMENT.......................................................................5

III.  STATEMENT OF FACTS............................................................................7

IV.   STANDARD FOR GRANTING A TEMPORARY RESTRAINING ORDER *EX
      PARTE*...............................................................................................12

V.    ARGUMENT..........................................................................................15

      A. ATHI is likely to succeed on the merits of this case...........................15

            1.  Copyright Infringement...............................................................17

            2.  Trafficking in Counterfeit Labels and Packaging.........................21

            3.  Common Law Trademark Infringement..........................................24

            4.  Tortious Interference with Prospective Economic Advantage.........28

      B. ATHI faces irreparable harm if Defendants are not enjoined.................31

      C. A balance of hardships tips decidedly in ATHI's favor and the public
         interest would not be disserved by the issuance of the order...............32

I.    CONCLUSION........................................................................................33

## TABLE OF AUTHORITIES

Page

### Cases

*American Can Co. v. Mansukhani,*
    742 F.2d 314 (7th Cir. 1984)....................................................................14

*Ashcroft v. American Civil Liberties Union,*
    542 U.S. 656 (2004)..............................................................................15

*In re Chippendales USA, Inc.,*
    622 F.3d 1346 (Fed. Cir. 2010).........................................................16, 26

*Clairol Inc. v. Gillette Co.,*
    389 F.2d 264 (2d Cir. 1968)...................................................................26

*Coach Servs., Inc. v. Triumph Learning LLC,*
    668 F.3d 1356 (Fed. Cir. 2012)...............................................................26

*Cunningham v. Laser Golf Corp.,*
    222 F.3d 943, 55 USPQ2d 1842, (Fed. Cir. 2000).....................................25

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006)..............................................................................13

*Feist Publications, Inc. v. Rural Tel. Serv. Co.,*

    499 U.S. 340 (1991)....................................................................17, 18, 19

*Fonar Corp. v. Magnetic Resonance Plus,*
    957 F. Supp. 477, (S.D.N.Y. 1997).................................................28, 29, 30

*FXDirectDealer, LLC v. Abadi,*
    2012 U.S. Dist. LEXIS 49588 (S.D.N.Y. Apr. 5, 2012)...............................13

*G.K.A. Beverage Corp. v. Honickman,*
    55 F.3d 762 (2d Cir. 1995)....................................................................29

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers,*
    415 U.S. 423 (1974).........................................................................13, 33

*Graphic Design Mktg. v. Xtreme Enters,*
    772 F. Supp. 2d 1029 (E.D. Wis. 2011)................................................23, 24

*Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,*
    780 F.2d 189 (2d Cir. 1985)...................................................................17

Page

**Cases**

*In re Cox Enters.,*
    82 USPQ2d 1040 (TTAB 2007)..................................................................25

*In re Linkvest S.A.,*
    24 USPQ2d 1716 (TTAB 1992)..................................................................26

*In re Max Capital Grp. Ltd.,*
    93 USPQ2d 1243 (TTAB 2010)..................................................................25

*In re Shell Oil Co.,*
    992 F.2d 1204 (Fed. Cir. 1993)..................................................................28

*In re Thor Tech, Inc.,*
    90 USPQ2d 1634 (TTAB 2009)..................................................................26

*In re Viterra Inc.,*
    671 F.3d 1358 (Fed. Cir. 2012)..................................................................25

*In re Vuitton et Fils S.A.,*
    606 F.2d 1 (2d Cir. 1979)..................................................................14

*In re White Rock Distilleries Inc.,*
    92 USPQ2d 1282 (TTAB 2009)..................................................................25

*Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.,*
    596 F.2d 70 (2d Cir. Vt. 1979)..................................................................31

*Laureyssens v. Idea Group, Inc.,*
    964 F.2d 131 (2d Cir. N.Y. 1992)..................................................................20

*Le Sportsac, Inc. v. K Mart Corp.,*
    754 F.2d 71 (2d Cir. N.Y. 1985)..................................................................31

*Lipton v. Nature Co.,*
    71 F.3d 464 (2d Cir. 1995)..................................................................20

*Microsoft Corp. v. Pronet Cyber Techs., Inc.,*
    593 F.Supp.2d 876 (E.D.Va. 2009)..................................................................22, 23, 24

*Paddington Corp. v. Attiki Importers & Distributors, Inc.,*
    996 F.2d 577 (2d Cir. 1993)..................................................................25

Page

## Cases

*Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,*
    274 F.2d 487 (2d Cir. 1960)..................................................21

*Polaroid Corp. v. Polarad Elecs. Corp.,*
    287 F.2d 492 (2d Cir. 1961)..............................................24-25

*PPX Enterprises v. Audio Fidelity Enterprises,*
    818 F.2d 266 (2d Cir. 1987)..................................................29

*Rex Med. L.P. v. Angiotech Pharms. (US), Inc.,*
    754 F. Supp. 2d 616 (S.D.N.Y. 2010)....................................13

*Rogers v. Koons,*
    960 F.2d 301 (2d Cir. 1992)..................................................17

*Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co.,*
    749 F.2d 124 (2d Cir. N.Y. 1984)..........................................31

*Salinger v. Colting,*
    607 F.3d 68 (2d Cir. 2010)..............................................13, 32

*Tom Doherty Ass'n Inc. v. Saban Entm't, Inc.,*
    60 F.3d 27 (2d Cir. 1995)......................................................31

*Vargas v. Pfizer Inc.,*
    352 Fed. Appx. 458, 459 (2d Cir. N.Y. 2009)........................20

*Vuitton v. White,*
    945 F.2d 569 (3d Cir. 1991)..................................................14

## Rules and Statutes

15 U.S.C. § 1125(a), § 43 of the Lanham Act.............................15, 17

17 U.S.C. § 2318(a).................................................................22

17 U.S.C. § 2318(b).................................................................23

17 U.S.C. § 2318(e).................................................................22

Federal Rule of Civil Procedure 65..............................................14

**Other Authorities**

Nimmer on Copyrights.................................................................................................................17

American Tibetan Health Institute, Inc. ("ATHI"), by its undersigned counsel, moves for a temporary restraining order against Kam Ng, C&L International Trading Inc. ("C&L"), Kang Li Trading Inc. ("KLT"), and K&C International Trading Inc. ("K&C), (collectively "Defendants"), and states as follows:

## I.    RELIEF REQUESTED

American Tibetan Health Institute, Inc. requests an Order ruling that the Defendants be enjoined during the pendency of this action from:

A.    Interfering with ATHI's business relations with its clients, intimidating its clients, and distributing correspondence or materials to ATHI's known clients and recipients of the March 15, 2013 letter;

B.    Engaging in any course of conduct likely to cause confusion, deception, or mistake, or to injure Plaintiff's business reputation or ATHI's TIBETAN BAICAO TEA trademark;

C.    Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which may or is likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, imported, distributed, or sold by Defendants are in any manner associated or connected with American Tibetan Health Institute, Inc., or are sold, manufactured, licensed, sponsored, approved or authorized by ATHI;

D.    Using any of American Tibetan Health Institute, Inc.'s copyrighted material contained in Registration No. CA 1-855-049, or any of its trademarks (Serial No. 85590233, Serial No. 85590288, Serial No. 85577000, Serial No. 85894301) or any other confusingly similar mark in any manner, on their goods;

E.      Selling or offering to sell, manufacturing, supplying, distributing, making, or

importing into the United States any TIBETAN BAICAO TEA product;

American Tibetan Health Institute, Inc. requests an Order ruling that the Defendants be

ordered to:

F.      Issue a statement retracting its letter dated March 15, 2013 to all its recipients;

G.      Issue a public apology to ATHI for falsely stating it owns ATHI's TIBETAN

BAICAO TEA trademark;

H.      Publish a statement retracting their letter dated March 15, 2013 and publish a

statement making an apology to American Tibetan Health Institute, Inc. for

falsely stating it owns American Tibetan Health Institute, Inc.'s TIBETAN

BAICAO TEA trademark. These statements shall be published in the *Sing Tao

Daily* newspaper, and in any other newspapers in which Kang Li Trading Inc.

published its letter dated March 15, 2013, and are to be published daily for a

consecutive number of days equal to the number of days the Kang Li Trading Inc.

published its letter dated March 15, 2013 in each newspaper.

I.      Comply with Impoundment by Seizure Order of goods made or used in violation

of the Plaintiffs' exclusive copyright rights, (hereinafter "Infringing Goods",) in

accordance with 17 U.S.C. § 503(a)(1)(A) as follows:

ORDERED that, the United States Marshal for this District and all other Districts within

the geographic confines of the United States of America, and/or any federal or state, county or

local law enforcement authorities in this District and all other Districts within the geographic

confines of the United States of America or its protectorates ("the Marshal"), assisted by one or

more attorneys or representatives of American Tibetan Health Institute, Inc., is hereby authorized

and directed to seize, impound, and deliver to American Tibetan Health Institute, Inc. or its

representatives any and all Infringing Goods, as well as advertising or marketing materials for

the same and any means for making the same; the books and records (including computer tapes

or disks) relating thereto; and the containers in which the same are held or transported, which

Defendants sell, attempt to sell, or holds within the geographic confines of the United States,

from the date this order is signed until midnight on _____, 2013; It

is further

   ORDERED that, the Marshal, assisted by one or more attorneys or representatives of

American Tibetan Health Institute, Inc., is hereby authorized to seize and impound all Infringing

Goods, as well as advertising or marketing materials for the same and any means for making the

same; the books and records (including computer tapes or disks) relating thereto; and the

containers in which the same are held or transported in the possession of the Defendants,

employing whatever reasonable force is necessary under the circumstances to carry out the

seizure, including that necessary to enter the premises owned, leased, or controlled by the

Defendants, and/or such other location and things to be searched where infringing products and

business records relating thereof may be found, and to inspect the contents of any rooms,

vehicles, closets, cabinets, containers, cases, desks, computers, databases, and software or

documents located in the areas under the control of the Defendants; It is further

   ORDERED that, to enforce compliance with this Order, the attorneys for American

Tibetan Health Institute, Inc. or their designee will accompany the Marshal and those persons

working under his supervision, and the Marshal shall inventory items so seized. Such items shall

be in the constructive possession of the Marshal although they shall be released to the custody of

the attorneys for American Tibetan Health Institute, Inc. or storage at location(s) to be designated

by the attorneys of American Tibetan Health Institute, Inc.  All products, means of making the product, packaging for the product, and other items seized shall be appropriately tagged to permit identification. Defendants shall be given a receipt therefore.  Such products seized shall be made available for inventory or inspection by any party or its counsel during normal business hours; It is further

ORDERED that, anyone interfering with the execution of this Order is subject to arrest by the Marshal or his representative; It is further

ORDERED that, counsel for American Tibetan Health Institute, Inc., on whose behalf the Court issues this Order, will act as a substitute custodian of any and all property seized pursuant to this Order and shall hold harmless the Marshal from any and all claims asserted by any court or tribunal, arising from any acts, incidents, or occurrences in connection with the seizure and possession of the Defendants' property, including any third party claims; It is further

ORDERED that, Defendants, its agents, servants, employees, officers, attorneys, successors, and assigns, and all persons, firms, and corporations acting in concert or participation with Defendants shall give to the Marshal or other law enforcement officers correct names, Social Security Numbers, driver's license numbers, passport information, visa information, residential and business addresses, and phone numbers for all individuals in any way involved in the acts alleged by the Plaintiff; and locations and places where the Infringing Goods are or have been stored; It is further

ORDERED that, when executing the seizure and impoundment provisions of this Order, the Marshal shall serve only a copy of this Order, the Summons and Complaint, by leaving them at the usual places of business of the Defendants, or any agent of the Defendants, or at the place where Infringing Goods are found, with any person of suitable age and discretion, and that such

service shall be deemed adequate and proper to give notice to Defendants of the terms of this Order and of the hearing on American Tibetan Health Institute, Inc.'s request for a Preliminary Injunction. American Tibetan Health Institute, Inc. shall promptly provide copies of all documents filed in support of this Order to any party or its attorney of record requesting such documents; It is further

ORDERED that, American Tibetan Health Institute, Inc.'s attorneys or agents shall promptly inspect all items seized, and if any items are found to be non-infringing products, such items shall be returned to Defendants within fifteen (15) business days after the date this Order is executed.

## II.   PRELIMINARY STATEMENT

This action arises out of Defendants' unlawful claim of ownership and use of trademarks owned by ATHI, and copyright infringement by the Defendants' in violation of the Plaintiff's rights. ATHI distributes the TIBETAN BAICAO TEA product to retailers and customers primarily in New York and California. On March 15, 2013, Defendants sent a letter to retailers of ATHI's TIBETAN BAICAO TEA product claiming that Defendants were the sole owners of two trademarks, one of which is a trademark application owned by the Plaintiff. Further exacerbating the public's confusion, the Defendants have published the same letter in the *Sing Tao Daily* newspaper daily from at least March 24, 2013 to at least March 31, 2013. Plaintiff's product is well-known in the market and ATHI's retailers were immediately surprised and confused by the allegations made in the Defendants' letter.

Shockingly, Defendants have also been selling TIBETAN BAICAO TEA in almost identical packaging to the Plaintiff. On April 5, 2013, Plaintiff learned that Defendants' retail location in New York, New York is selling product in identically sized, colored, and marked

packaging. The only difference in appearance between the Plaintiff's product and the Defendants' is the Defendants' packaging is labeled with "K&C International Trading INC" on the back panel. On April 14, 2013, Plaintiff learned that Defendants were also selling a TIBETAN BAICAO TEA product in counterfeit packaging, bearing ATHI's name on the back panel.

(For the Court's convenience, a side-by-side comparison of the Plaintiff's product and the Defendants' counterfeit products is attached to this Application as Exhibit 1. Images of the Plaintiff's products are referred to in Exh. D to the Declaration of Otto O. Lee, and images of the products purchased from the Defendants are referred to in Exh. C and Exh. E to the Declaration of Daniel Liu.)

As a result of Defendants' brazen actions, Plaintiff's business reputation is under direct attack. ATHI and its distributors have been bombarded with telephone calls from its retailers who are confused as to which TIBETAN BAICAO TEA products are genuine and questioning the integrity of ATHI's trademark claims. *Declaration of Shirley Lee* [hereinafter "S. Lee Decl."] *at ¶ 7, 10.* Defendants have also made threats to Plaintiff's retailers, over the phone and in-person. *Id. at ¶ 13.*

The ability of ATHI to reassure its customers that its product and its marks are the only legal and valid TIBETAN BAICAO TEA product is paramount in a market which is plagued by infringers and counterfeiters. If the Defendants' activity remains unchecked, ATHI's retailers will end their distribution contracts with ATHI. ATHI's customers will also lose faith in the TIBETAN BAICAO TEA brand, thereby diminishing the value of ATHI's business and the goodwill which has been built in its brand. Therefore, ATHI has been and continues to be irreparably damaged by Defendants' unlawful actions.

## III.   STATEMENT OF FACTS

This statement of facts is based on the Complaint and the Declarations of Shirley Lee, Anna Li, Daniel Liu, Dr. Qiong Zhang Shen, Brian I. Marcus, and Otto O. Lee filed herewith. ATHI is a corporation engaged in the business of manufacturing and selling a tea product under the TIBETAN BAICAO TEA mark, as well as the trademark consisting of Chinese characters which translate to "TIBETAN BAICAO TEA" in English (the "Chinese Characters Trademark" herein).   Plaintiff created, owns, and was the first to use these trademarks.

ATHI, directly or through a predecessor in interest, has used the TIBETAN BAICAO TEA trademark in connection with the sale of tea products anywhere since around April 8, 2009, and in interstate commerce and within this District since at least as early as July 15, 2009. ATHI has used the TIBETAN BAICAO TEA trademark continuously in interstate commerce since that time. ATHI is the owner of U.S. Application Serial No. 85/577,000 for the trademark TIBETAN BAICAO TEA in standard characters in International Class 030 for "tea," applied for on March 22, 2012 at the United States Patent and Trademark Office ("USPTO"). *S. Lee Decl. at ¶ 3.*

ATHI, directly or through a predecessor in interest, has also used the Chinese Characters Trademark in connection with the sale of tea products anywhere since around April 8, 2009, and in interstate commerce and within this District since at least as early as July 2009. ATHI has used the Chinese Characters Trademark continuously in interstate commerce since that time. ATHI is the owner of U.S. Application Serial No. 85/894,301 for the Chinese Characters Trademark in International Class 030 for "tea," applied for on April 3, 2013 at the USPTO. *Declaration of Otto O. Lee* [hereinafter "O. Lee Decl."] *at ¶ 4.*

Plaintiff further uses a trademark comprising a stylized representation of a horse (the "Horse Design Mark" herein) and a trademark comprising a stylized representation of a teacup

next to a scroll and inkpot (the "Scroll Design Mark" herein) in connection with its tea products. ATHI is the owner of U.S. Application Serial No. 85/590,288 for the Horse Design Mark, and U.S. Application Serial No. 85/590,233 for the Scroll Design Mark. *Declaration of Brian I. Marcus* [hereinafter "Marcus Decl."] *at ¶ 8.* ATHI, directly or through a predecessor in interest, has used the Horse Design Mark and the Scroll Design Mark in connection with the sale of tea products anywhere since around April 8, 2009, and in interstate commerce and within this District since at least as early as July 15, 2009. ATHI has used the Horse Design Mark and the Scroll Design Mark continuously in interstate commerce since that time.

Plaintiff's goods are sold to retailers and distributors, including without limitation Asian tea and herb stores and Asian markets, which then sell such goods to the consuming public. Plaintiff's tea is consumed by end users for health purposes.

Plaintiff has invested substantial time, effort, and financial resources promoting its brand through the use of its TIBETAN BAICAO TEA mark, Chinese Characters Trademark, Horse Design Mark, the Scroll Design Mark and distinctive packaging in connection with the marketing and sale of its tea products in interstate commerce. Through widespread and favorable public recognition, the trademarks have become assets of considerable value to ATHI as symbols of ATHI, its quality products, and its goodwill.

ATHI's products have met with considerable market success due to the quality of the products themselves and substantial goodwill associated with ATHI and its trademarks. Due to the reputation and quality of ATHI's tea products, ATHI has become a popular target for counterfeiting and infringement, including without limitation the actions Defendants alleged in the Complaint.

On or about April 8, 2009, Stan Lee created the original visual work known as "Tibetan Baicao Tea packaging" which is copyrightable subject matter under the Copyright Act, 17 U.S.C. §101, *et seq.* Upon Stan Lee's death in 2009, the copyright for the "Tibetan Baicao Tea packaging" work transferred to Shirley Lee through inheritance. Shirley Lee complied in all respects with the provisions of the Copyright Act, and on April 10, 2013, registered the copyright for the "Tibetan Baicao Tea packaging" work with the United States Copyright Office ("Copyright Office") and secured Registration No. VA 1-855-049, a copy of which is attached to this Application as Exhibit 2. By written instrument effective April 10, 2013, Shirley Lee assigned all right, title, and interest in and to the copyright in the "Tibetan Baicao Tea packaging" work and registration therefore, to ATHI. This visual work embodied in ATHI's copyright registration and applications comprise the product packaging with which ATHI has sold and sells its tea.

Plaintiff believes that C&L, KLT, and K&C are effectively the same business as they share the same phone number and business address. Notwithstanding Plaintiff's established rights in its TIBETAN BAICAO TEA trademark and Chinese Characters Trademark, Defendants and each of them adopted and used the confusingly similar marks TIBETAN BAICAO TEA and Chinese characters translating to "TIBETAN BAICAO TEA" in English in connection with the promotion and sale of tea in interstate commerce. *See Exhibit C and Exhibit E to Declaration of Daniel Liu* [hereinafter "D. Liu Decl."].

In contravention of Plaintiff's rights, Kam Ng also sought and obtained a registration on the USPTO's Supplemental Register, Registration No. 4,247,693, for the composite mark combining the text "TIBETAN BAICAO TEA" with the Chinese characters translating in English to "TIBETAN BAICAO TEA." Kam Ng applied for registration on April 18, 2013 and

listed a date of first use in interstate commerce of June 1, 2010. The goods covered under

Registration No. 4,247,693 are "herbal teas for medicinal purposes" in International Class 005.

Plaintiff has never at any point, explicitly or implicitly, authorized, encouraged, agreed

to, or otherwise ratified Defendants' use of or application for either the TIBETAN BAICAO

TEA trademark or the Chinese Characters Trademark. Defendants' use of marks confusingly

similar and identical to Plaintiff's marks is simply an attempt by Defendants to trade on the good

name and goodwill of Plaintiff without incurring the cost and time required to establish such

goodwill legitimately.

Defendants are offering and selling their tea products under the infringing marks to the

same retailers and distributors that also sell Plaintiff's tea products, namely, Asian tea and herbal

stores and Asian markets, which in turn sell the tea products to the consuming public.

Defendants have been found to be selling at least two counterfeit versions of the Plaintiff's

product. One of the products bears packaging nearly indistinguishable from the Plaintiff's

product, except that the Defendants have printed their own company name on the package. *D.*

*Liu Decl. at ¶ 10-11.* The other is a wholesale replica of the Plaintiff's packaging, with only a

minor change in the format of the expiration date. *See D. Liu Decl. at ¶ 15; S. Lee Decl. at ¶ 14.*

Defendants sent a letter dated March 15, 2013 to Plaintiff's retailers and distributors,

some of them within this District, falsely and unlawfully stating that "Kang Li Trading Inc. is the

sole owner of the Tibetan Baicao Tea trademarks and has registered the two parts of the

trademarks. USTPO [sic] serial numbers are 8557700 and 85601631, respectively." The letter

further goes on to threaten Plaintiff's distributors and retailers with legal action, stating that

"Kang Li Trading Inc. has the exclusive right to use the trademarks for their products under all

circumstances. Should we find anyone use the trademarks without prior permission for any

commercial purpose whatsoever, Kang Li Trading Inc. will immediately pursue all legal actions to the fullest extent permissible by law." The letter is written on the letterhead of C&L and KLT, and is signed by Kam Ng as CEO of KLT. *See Exhibit A to S. Lee Decl.*

Defendants have placed ads in newspapers promoting their tea goods under the TIBETAN BAICAO TEA mark and the mark consisting of Chinese characters translating to "TIBETAN BAICAO TEA." The ads prominently display the TIBETAN BAICAO TEA mark and the mark consisting of Chinese characters for "TIBETAN BAICAO TEA" in connection with Defendants' tea products. Additionally, the said ads contain the March 15, 2013 letter sent by Defendants to Plaintiff's retailers and distributors. Each ad contains Defendants' statements that "Kang Li Trading Inc. is the sole owner of the Tibetan Baicao Tea trademarks and has registered the two parts of the trademarks. USTPO [sic] serial numbers are 8557700 and 85601631, respectively," and that "Kang Li Trading Inc. has the exclusive right to use the trademarks for their products under all circumstances. Should we find anyone use the trademarks without prior permission for any commercial purpose whatsoever, Kang Li Trading Inc. will immediately pursue all legal actions to the fullest extent permissible by law." *See Exhibit B to S. Lee Decl.*

Defendants do not own the TIBETAN BAICAO TEA trademark or U.S. Application Serial No. 85/577,000 for the said mark TIBETAN BAICAO TEA as both mark and application are clearly owned exclusively by Plaintiff. Such statement in Defendants' March 15, 2013 letter that KLT or any other Defendant owns the subject trademark and application for the subject trademark is plainly false and a bald attempt by Defendants to improperly and negatively influence, interfere with, and co-opt sales of and demand for Plaintiff's tea products sold under the subject mark.

Upon receipt of Defendants' March 15, 2013 letter, Plaintiff's retailers and distributors have, among other things, actually withheld sales of Plaintiff's products bearing its TIBETAN BAICAO TEA mark and the Chinese Characters Trademark. As a direct result of Defendants' letter, Plaintiff has experienced loss of sales of goods under its marks and decreased demand for its tea products from its distributors and retailers, and continues to experience such loss of sales and decrease in demand, and corresponding lost profits and lost market share. Plaintiff has received numerous calls from its retailers and distributors concerning Defendants' letter and threat of legal action for selling goods bearing Plaintiff's marks.

As a result of Defendants' letter, Plaintiff's retailers and distributors have expressed confusion regarding ownership of the TIBETAN BAICAO TEA trademark and application and Chinese Characters Trademark and fear over whether they may lawfully sell ATHI's goods under the subject marks. Defendants' improper letter has caused ATHI's retailers and distributors to question whether ATHI's tea products are genuine and to pull ATHI's tea products from their stores for fear of suit. Retailers of ATHI's product are undergoing threats by phone and in-person from the Defendants. ATHI has suffered and continues to suffer harm to its reputation and goodwill as Defendants' unlawful letter falsely informs retailers and distributors that ATHI is not the owner of its own trademarks, and as Defendants trade on the good name of ATHI in leading purchasers to believe that Defendants are the source of goods bearing ATHI's trademarks.

## IV.   STANDARD FOR GRANTING A TEMPORARY RESTRAINING ORDER *EX PARTE*

A temporary restraining order functions in much the same way as a preliminary injunction as it preserves the status quo pending either a hearing on an application for preliminary injunction or a trial on the merits. *Granny Goose Foods, Inc. v. Brotherhood of*

*Teamsters & Auto Truck Drivers*, 415 U.S. 423 (1974). Plaintiff requests a temporary restraining order to maintain the status quo and prevent Defendants from causing further damage to Plaintiff by injuring Plaintiff's reputation and intellectual property rights by confusing customers and diluting its brand until either a hearing regarding issuance of a preliminary injunction or a trial on the merits.

The Second Circuit has adopted the Supreme Court's test for injunctive relief set forth in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). *eBay* strongly indicates that the traditional principles of equity employed in that case are the presumptive standard for injunctions in any context. *See Salinger v. Colting*, 607 F.3d 68, 70 (2d Cir. 2010). The Second Circuit has decided that all preliminary injunctions should be issued based upon the *eBay* framework. This means that the *eBay* framework should be applied to both temporary restraining orders and preliminary injunctions. *See Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 620 (S.D.N.Y. 2010); *see also FXDirectDealer, LLC v. Abadi*, 2012 U.S. Dist. LEXIS 49588 (S.D.N.Y. Apr. 5, 2012).

A temporary restraining order should be grated upon a showing of plaintiff's likelihood of success on the merits where the plaintiff has also shown that: "(1) he is likely to suffer irreparable injury in the absence of an injunction; (2) remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) the balance of hardships tips in his favor; and (4) the public interest would not be disserved by the issuance of the injunction." *Rex Med. L.P.*, 754 F. Supp. 2d at 620 (quoting *eBay Inc.*, 547 U.S. 388, 391 (2006) (internal quotations omitted)).

Under Federal Rule of Civil Procedure 65, a court may issue a temporary restraining without notice only if "specific facts in an affidavit or a verified complaint clearly show that

immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." A court may issue an *ex parte* temporary restraining order pursuant to Rule 65 where notice to the defendants would render the seeking of the temporary restraining order fruitless. *See In re Vuitton et Fils S.A.*, 606 F.2d 1 (2d Cir. 1979).

Indeed, while the issuance of a temporary restraining order without notice is rare, courts have repeatedly found *ex parte* temporary restraining orders necessary under certain circumstances. *See, e.g., Vuitton v. White*, 945 F.2d 569 (3d Cir. 1991); *American Can Co. v. Mansukhani*, 742 F.2d 314 (7th Cir. 1984). Rule 65 "by its very terms allows for the issuance of an ex parte temporary restraining order when (1) the failure to issue it would result in 'immediate and irreparable injury, loss, or damage' and (2) the applicant sufficiently demonstrates the reason that notice 'should not be required.'" *In re Vuitton et Fils S.A.*, 606 F.2d at 4. The immediate action of a temporary restraining order is vital when imminent sale, destruction, or concealment of the disputed property is threatened. *See id.*

In the present case, the Court should grant the temporary restraining order *ex parte* because Defendants' use and claim of ownership of ATHI's trademark and infringement of Plaintiffs' copyrights is causing immediate and irreparable harm to Plaintiff as its retailers are being threatened and fear legal action by the Defendants for selling the ATHI products bearing ATHI's own trademark. *See S. Lee Decl. at ¶ 7, 13; O. Lee Decl. at ¶ 4; Declaration of Anna Li* [hereinafter "Li Decl."] *at ¶ 9-11; Declaration of Dr. Shen* [hereinafter "Shen Decl."] *at ¶ 5-7.* Defendants are already beginning to conceal their infringing goods. *D. Liu Decl. at ¶ 6.* Granting of this order is the only way to preserve the evidence of Defendants' infringing goods, which Defendants have shown they have the intent to conceal, and may possibly destroy.

In addition, numerous customers and potential customers are exposed to Defendants'

infringing products daily causing confusion as to the products' origins and dilution of the valuable TIBETAN BAICAO TEA brand.   Unless the temporary restraining order issues immediately and before the Defendants can be heard, Defendants' infringement of the Plaintiff's copyright and Defendants' use of ATHI's trademarks will cause further irreparable harm to Plaintiff in the form of lost sales and customers, damage to the TIBETAN BAICAO TEA brand, and dilution of ATHI's intellectual property rights. *See O. Lee Decl. at ¶ 5; Shen Decl. at ¶ 9.*

## V.   ARGUMENT

### A.   ATHI is likely to succeed on the merits of this case

ATHI is likely to succeed on its trademark claims against Defendants.  To obtain a preliminary injunction, the plaintiff must show that it is "likely" to prevail on the merits. *Ashcroft v. American Civil Liberties Union*, 542 U.S. 656, 665 (2004). Plaintiff does not, however, need to show positively they will prevail on the merits.  Here, ATHI is able show an overwhelming likelihood of success on three causes of action against the Defendants. Specifically, Plaintiff alleges:  (1) copyright infringement under 17 USC § 501; (2) trafficking in counterfeit labels and packaging under 18 U.S.C. § 2318(e); (3) common law trademark infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (4) tortious interference with prospective economic advantage. *See Plaintiff's Complaint.*

Plaintiff is the owner of U.S. Copyright Registration Nos. VA 1-855-049 for its unique tea product packaging, a visual work titled "Tibetan Baicao Tea packaging." The work embodied in this registration is wholly original to Plaintiff, is copyrightable subject matter, and is entitled to protection under the copyright laws of the United States.

Defendants have engaged in copying, reproducing, adapting, distributing, and otherwise using the copyrighted material of ATHI's original tea product packaging. Defendants have sold

and are selling tea in product packaging that is virtually identical to and a wholesale copy of ATHI's original product packaging registered with the Copyright Office. Defendants' packaging is a counterfeit of Plaintiff's copyrighted packaging. In one version, the Plaintiff's name has been replaced by K&C's company information on the packaging. In another version, the Defendants have copied the entirety of the Plaintiff's packaging and marks. The Plaintiff's valid copyright and Defendants' blatant infringement of this copyright evince a likelihood of success on the merits of both the copyright claims.

In regards to the trademarks, registration of a mark on the Supplemental Register does not prove the registrant's exclusive right to use the mark or ownership of the mark. *In re Chippendales USA, Inc.*, 622 F.3d 1346, 1353 n.9 (Fed. Cir. 2010). In the March 15th letter the Defendants state: "Kang Li Trading Inc. is the sole owner of the Tibetan Baicao Tea trademarks and has registered the two parts of the trademarks. USTPO [sic] serial numbers are 8557700 and 85601631, respectively," and that "Kang Li Trading Inc. has the exclusive right to use the trademarks for their products under all circumstances." Neither of these statements is true. KLT is not the sole owner of the two marks listed, nor does KLT have the exclusive right to use the marks.

ATHI owns the U.S. Trademark Application Serial No. 85/577,000 for TIBETAN BAICAO TEA, filed March 22, 2012, with the date of first use in commerce as July 15, 2009. Defendant Kam Ng applied for registration of a design mark (Registration No. 4247693) with the literal element "TIBETAN BAICAO TEA" on April 18, 2012, claiming a date of first use in commerce as June 1, 2010. Through an erroneous act by the USPTO, Kam Ng's mark was registered before the Plaintiff's. *See O. Lee Decl. at ¶ 2.* It is evident that Plaintiff's mark not only pre-dates the Defendants' application but also pre-dates the Defendants' date of first use in

commerce. Due to the fact that the marks are virtually identical, there is a high likelihood of confusion, and the Defendants' continued use constitutes trademark infringement and unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

### 1. Copyright Infringement

A prima facie case of copyright infringement is established when the plaintiff is able to show the following: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

**Ownership of a valid copyright:** In order to prove ownership of a valid copyright, the following elements must be met: (1) originality in the author; (2) copyrightability of the subject matter; (3) a national point of attachment of the work, such as to permit a claim of copyright; (4) compliance with applicable statutory formalities; and (5) if the plaintiff is not the author, a transfer of rights or other relationship between the author and the plaintiff so as to constitute the plaintiff as the valid copyright claimant. Nimmer on Copyrights §13.01. The Second Circuit has stated that "[a] copyright registration constitutes prima facie evidence of ownership of a valid copyright, although the presumption of ownership is a rebuttable one." *Rogers v. Koons*, 960 F.2d 301, 306 (2d Cir. 1992); Hasbro Bradley, Inc. v. Sparkle Toys, Inc., 780 F.2d 189, 192 (2d Cir. 1985). This means that the requirements of originality, copyrightability, nationality, and statutory compliance will be satisfied by a valid copyright so long as a proper chain of title can be established. *See* Nimmer on Copyright § 13.01.

In the present case, ATHI is the lawful owner of U.S. Copyright Registration No. VA 1-855-049. Because of this valid copyright registration, the requirements of originality, copyrightability, nationality and statutory compliance are presumed and satisfied to prove

ownership. Further, because there were no other actors involved with the use and registration of the mark other than Mrs. Lee and Mrs. Lee's deceased husband, a proper chain of title is established. Mrs. Lee transferred to ATHI all rights, interests, and liabilities in and to the Copyright.  Therefore, based on the presumptions raised by a valid copyright registration and the established chain of title, ATHI has validly shown ownership of the valid copyrights.

Even if the presumptions raised by a valid copyright registration were not applied to this case, ATHI would still be able to show ownership of the copyright. First, the work in "Tibetan Baicao Tea packaging" No. VA 1-855-049 is original. To be original, it must be shown that the work was independently created by the author and that it possess some minimal level of creativity. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345-346 (U.S. 1991).  If the work is deemed original, it will be copyrightable and therefore satisfy the first and second prong of the five part test.

Here, the "Tibetan Baicao Tea packaging" work was independently created by Mr. Stan Lee, the deceased husband of Mrs. Shirley Lee. The copyrighted packaging was developed by Mr. Lee to give their tea a distinct look and differentiate them from other offerings in the marketplace. The "Tibetan Baicao Tea packaging" work has been used in the sale of tea since April 2009.  Mrs. Shirley Lee inherited the rights to the work upon Mr. Lee's death.  Because Mr. Lee independently developed the copyrightable material and the use of the "Tibetan Baicao Tea packaging" work in the sale of tea predates all other uses, ATHI can establish the originality of the mark.

As for creativity, the Constitution only requires a *de minimis* level of creativity to protect copyrightable works. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 363 (U.S. 1991) . Here, the layout and design of the "Tibetan Baicao Tea packaging" work required at least *de*

*minimis* creativity. From the color selection to layout to arrangement of information on the box itself, there are many ways to express the ideas on the tea box and selecting how the ideas should be expressed required creativity. ATHI chose one of an infinite number of ways to express its ideas for packaging of its tea. Therefore, the "Tibetan Baicao Tea packaging" work required at least some level of creativity to create and is thus copyrightable. Based on the above, the work in No. VA 1-855-049 is both original and copyrightable.

ATHI has also established a national point of attachment to the work. Not only has she filed for and been granted copyright protection for "Tibetan Baicao Tea packaging," but ATHI's predecessors in interest have used the copyrighted material in the sale of tea within the United States since at least 2009. Therefore, there is strong evidence of a national tie between ATHI and the United States.

Next, ATHI complied with applicable statutory formalities. This is evidenced by the fact that Mrs. Lee applied for and was granted copyright registration for the works. Even before the copyright was registered, Mrs. Lee nor ATHI ever took action that was contrary to statutory requirements for the use and protection of a copyright. At all times, Mrs. Lee and ATHI have complied with statutory formalities regarding copyrights.

Finally, as mentioned above, ATHI can establish a positive and secure chain of title because ATHI and its predecessors in interest are the only parties to have ever used the "Tibetan Baicao Tea packaging" work. This means that no other person or entity has claim to the copyright other than ATHI.

According to the information listed above, even if the factors of ownership are not presumed based on a valid copyright registration, ATHI will be able to prove each element and will therefore be able to establish ownership of the copyright.

**Copying of constituent elements of the work that are original:** Generally, it is very difficult to prove copying by direct evidence. Absent an eyewitness or other direct evidence, copying is generally proven by circumstantial evidence. "[A]ctionable copying can be inferred from the defendant's access to the copyrighted work and substantial similarity between the copyrighted work and the alleged infringement. " *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 139 (2d Cir. N.Y. 1992). This means that, absent direct evidence, copying may be proven by showing that Defendants had access to the copyrighted material and that Defendants material is substantially similar to Plaintiff's protectable material such that usage amounts to an improper or unlawful appropriation.

In the case at hand, there is no direct evidence that Defendants had access to ATHI's copyrightable material. When there is no direct evidence, as here, "[p]roof of access may be inferred where there are striking similarities probative of copying." *Vargas v. Pfizer Inc.*, 352 Fed. Appx. 458, 459 (2d Cir. N.Y. 2009)(internal citations omitted). The Second Circuit has further stated that, "If the two works are so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access." *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995). Therefore, because there is no direct evidence of access by Defendants to Plaintiff's protectable material, a high degree of substantial similarity between Plaintiff's and Defendants' products will satisfy both the access and substantial similarity prong of the copyright infringement analysis.

The proper test for determining whether Defendants' work is substantially similar to Plaintiff's copyright is whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960).

Here, Defendants' tea packaging is nearly indistinguishable from the copyrighted packaging of ATHI's tea. Defendants' use the same color, symbols, and layout that ATHI does in its protected packaging. For all intents and purposes, the packaging of Defendants' is identical to that of ATHI's. On one version, the only difference between the two is that Defendants' have changed certain contact information on their packaging. Such changes are very small, insignificant, and an ordinary observer would never know the difference between the protected packaging and Defendants' packaging even if he were made aware of the different contact information. Defendants' entire packaging scheme is designed to manipulate the ordinary observer by capitalizing on ATHI's intellectual property rights.

Based on the above information, Plaintiff will be able to establish ownership of the mark. Plaintiff's valid registration of its copyrights will raise the presumption of ownership. Even if that is not enough, ATHI will be able to establish ownership of the copyrighted material. Further, Plaintiff will be able to prove access and substantial similarity for copyright infringement based on the almost identical nature of Defendants' packaging to Plaintiff's copyrighted work. Therefore, based on the facts stated above, it is very likely that Plaintiff will be successful in a claim of copyright infringement and preliminary injunctive relief including impoundment of the infringing articles is therefore appropriate.

## 2. Trafficking in Counterfeit Labels and Packaging

Title 17 of United States Code section 2318 provides for penalties when a defendant is engaged in trafficking in counterfeit labels, illicit labels, or counterfeit documentation or packaging. Subsection (e) of Section 2318 specifically provides for a civil remedy when a plaintiff has been injured by defendants participating in such activity.

Subsection (a) of the statute states, in relevant part, that whoever knowingly traffics in counterfeit documentation or packaging when the counterfeited documentation or packaging at issue is copyrighted shall be fined or imprisoned for not more than five years, or both. *See* 17 USC § 2318(a).  This subsection provides for criminal penalties for those who engage in the behavior described above. However, Subsection (e) of the same statute creates a civil cause of action in which  an injured plaintiff under Subsection (a) may be awarded, at the discretion of the court, injunctive relief against the Defendants, impoundment of the counterfeited goods, reasonable attorney fees and costs, and actual damages or statutory damages. *See* 17 USC § 2318(e).

Though there is little precedent within the Second Circuit that relies upon this statutory scheme in this context, the statute has been used in such a way in other jurisdictions and we urge the Court to adopt its Sister Circuits' decisions.

In *Microsoft Corp. v. Pronet Cyber Techs., Inc.*, the defendant was creating counterfeit labels and affixing them to what he believed were genuine Microsoft products. The Court determined that the labels the defendant had affixed to the products were counterfeit because, "they appeared to be genuine, but were not." 593 F.Supp.2d 876, 882-883 (E.D.Va. 2009). The defendant had knowingly created labels that appeared to be genuine, but were not, in order to make the product he sold seem legitimate. *See Id.*

Similarly, in *Graphic Design Mktg. v. Xtreme Enters*, the Eastern District of Wisconsin found that packaging created by Xtreme appeared to be genuine, but was not. In this specific case, the back of the packaging produced by defendant contained plaintiff's name and the UPC barcode of the original product. 772 F. Supp. 2d 1029, 1033-1034 (E.D. Wis. 2011). The Court found this to be evidence that defendant knowingly trafficked in counterfeit packaging. *Id.*

In the case at hand, it is very likely that ATHI will succeed on a claim of Copyright Counterfeiting under 17 USCS § 2318.  ATHI will be able to show that Defendants knowingly trafficked in counterfeit packaging.

As shown by the two cases above, a defendant is not required to know that their actions may open them up to civil or criminal liability. Defendants' must only know that they are creating packaging intending that the product look genuine. *Microsoft,* 593 F.Supp.2d at 883. Here, while Plaintiff may not be in possession of direct evidence that Defendants knowingly intended the product packaging to look genuine, the similarity between ATHI's product packaging and Defendants' is extremely strong circumstantial evidence that Defendants' intended the product to look genuine when it was not.

In *Microsoft,* defendant created labels that looked genuine but were not in order to make the entire packaging look genuine. The defendant knowingly created the false labels because he wanted people to think the product was genuine. *Id.* In the case at hand, Defendants have copied ATHI's packaging in its entirety in order to make their product look genuine and divert sales from actual TIBETAN BAICAO TEA.  Based on the above facts, it is very likely that ATHI will be able to satisfy the knowing prong of this test.

Section 2318(b) defines traffic as "to transport, transfer or otherwise dispose of, to another, for purposes of commercial advantage." In this case, Defendants have transported and transferred their tea product for purposes of commercial advantage. They have sold their product to retailers and other buyers in order to make a profit.   These facts make it highly likely that ATHI will be able to satisfy this prong of the test.

Both *Microsoft* and *Graphic Design* state that the standard for deciding whether packaging is counterfeit is that it "appeared to be genuine, but [was] not." *Microsoft.* 593

F.Supp.2d at 883. *Graphic Design Mktg.*, 772 F. Supp. 2d at 1033. In this case, Defendants' packaging is virtually identical to ATHI's. Inclusive of all ATHI's trademarks and elements of its distinctive packaging appearance, Defendants' counterfeit packaging is designed to look genuine in order to divert sales from Plaintiff's actual product. Because of the striking similarity and almost identical nature of Defendants' packaging, it is very likely that ATHI will be able to show that Defendants attempted to make their packaging appear genuine when it was not and will therefore likely satisfy this prong of the test.

Plaintiff has a valid copyright registration on the designs that Defendants have copied. Because the registrations have been issued and are valid, it is very likely that Plaintiff will be successful in proving this prong of the test.

Based on the above, it is very likely that Plaintiff will be able to prove that Defendants knowingly trafficked in counterfeit packaging where the copied packaging is protected by valid copyright registrations. Because it is very likely that Plaintiff will be successful on the merits of this claim, injunctive relief including impoundment of the infringing goods is appropriate.

### 3. Common Law Trademark Infringement

In the Second Circuit, the factors considered to determine likelihood of confusion include: (1) the strength of the plaintiff's mark, (2) the degree of similarity between the two marks, (3) the proximity of the products, (4) the likelihood that the prior owner will bridge the gap, (5) actual confusion, (6) the reciprocal of defendant's good faith in adopting its own mark, (7) the quality of defendant's product, and (8) the sophistication of the buyers. *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). These eight factors are not exclusive and should not be weighed against each other in a mechanical process. *Paddington Corp. v.*

*Attiki Importers & Distributors, Inc.*, 996 F.2d 577, 584 (2d Cir. 1993). "Rather, a court should focus on the ultimate question of whether consumers are likely to be confused." *Id.*

**Similarity of the marks:** ATHI's TIBETAN BAICAO TEA mark, Serial No. 85/577,000, is identical to the literal elements the Defendants' mark, Registration No. 4247693. ATHI's mark consists of the wording TIBETAN BAICAO TEA in standard characters. When a mark is standard characters, the owner of that mark is not limited to any particular depiction or representation of the mark. *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 950, 55 USPQ2d 1842, 1847 (Fed. Cir. 2000); *In re Cox Enters.*, 82 USPQ2d 1040, 1044 (TTAB 2007). The owner's rights connected with a mark in standard characters resides with the literal element of the wording itself, rather than any particular display of the wording. *In re White Rock Distilleries Inc.*, 92 USPQ2d 1282, 1284 (TTAB 2009).

Defendant's mark, Registration No. 4247693, is a composite mark, consisting of the wording "Tibetan Baicao Tea" and 5 Chinese characters which translate in English to "Tibetan Baicao Tea." When a mark is comprised of both wording and a design, often greater weight is given to the wording, as consumers are most likely to use the wording to refer to the goods. *See, e.g., In re Viterra Inc.*, 671 F.3d 1358, 1366 (Fed. Cir. 2012); *In re Max Capital Grp. Ltd.*, 93 USPQ2d 1243, 1247 (TTAB 2010).

Therefore, when the literal elements of the Defendant's mark are compared to the Plaintiff's mark, there is no difference, in visual appearance, sound, meaning, or any other criterion, between the marks themselves. Given that the marks are identical, a likelihood of confusion among purchasers is unavoidable. This factor weighs heavily in favor of the Plaintiff.

**Proximity of the goods:** The goods associated with both the Plaintiff's and the Defendant's marks are also virtually identical, the only difference being a semantic one. ATHI's

TIBETAN BAICAO TEA mark, Serial No. 85/577,000, is for "tea." Defendants' mark, Registration No. 4247693, is for "herbal teas for medicinal purposes." The nature and scope of a party's goods must be determined on the basis of the goods recited in the application. *See, e.g.*, *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1370 (Fed. Cir. 2012).

Because the Plaintiff's goods are defined broadly as "tea" it is presumed that the goods claimed encompass all goods of that type, such as "herbal tea." *See, e.g.*, *In re Thor Tech, Inc.*, 90 USPQ2d 1634, 1638 (TTAB 2009) ("We have no authority to read any restrictions or limitations into the registrant's description of goods."); *In re Linkvest S.A.*, 24 USPQ2d 1716 (TTAB 1992). As the parties' marks are used in relation to extremely similar, if not identical, products, a likelihood of confusion is certain to result. This factor weighs heavily in favor of the Plaintiff.

**Strength of the mark:** As stated above, Plaintiff is the owner of five U.S. Trademark applications and the marks have been and continue to be in use in connection with its TIBETAN BAICAO TEA product. Plaintiff has directly, and through its predecessors, continuously used the TIBETAN BAICAO TEA mark in commerce since at least July 2009. *See S. Lee Decl. at ¶ 3; Marcus Decl. at ¶ 4*. Defendants' mark is registered on the Supplemental Register, which provides no substantive rights beyond any traditional common law rights that may be applicable to the mark. *Clairol Inc. v. Gillette Co.*, 389 F.2d 264, 267 (2d Cir. 1968); *see also In re Chippendales USA, Inc.*, 622 F.3d 1346, 1353 n.9 (Fed. Cir. 2010). The Defendants' mark claims a date of first use in commerce as June 2010. Therefore, Plaintiff's mark is clearly entitled to priority. This factor tips in favor of the Plaintiff.

**Evidence of actual confusion:** Shirley Lee, President of ATHI, has received numerous phone calls from distributors of ATHI's TIBETAN BAICAO TEA product confused by the

Defendants' March 15, 2013 letter. *See S. Lee Decl. at ¶ 7*. ATHI's distributors have also received many inquiries from retailers confused about which product is authentic. *Shen Decl. at ¶ 5*. Mrs. Lee has gone to great lengths to reassure her retailers that ATHI is in fact the lawful owner of the TIBETAN BAICAO TEA mark, Serial No. 85/577,000, including sending immediate correspondence to all retailers in reaction to the Defendants' letter. *See S. Lee Decl. at ¶ 9*. Despite her best efforts, retailers of the ATHI product still feel threatened and confused by the Defendants' actions. *See S. Lee Decl. at ¶ 7, 10; A.Li Decl. at ¶ 7, 9-11; Shen Decl. at ¶ 6-7*.

**Other factors:** Defendants market and sell their product by trading on the goodwill and brand recognition that ATHI has expended incredible effort to create. Defendants had constructive notice of ATHI's TIBETAN BAICAO TEA mark, Serial No. 85/577,000, given that ATHI's application was filed approximately a month before the Defendant's. If Defendant had conducted any trademark clearance search, the Defendants would certainly have knowledge of ATHI's mark. Therefore, it must be inferred that the Defendants adopted the mark in bad faith.

Plaintiff's entire business interest is dependent on the quality, trust, goodwill, and reputation of its products. It would be devastating to Plaintiff's goodwill and competitive position in the market to have Defendants' unknown and untested product associated with the Plaintiff. Any health related problems or complaints due to the Defendants' products would likely be immediately attributed to ATHI. Defendants' use of confusingly similar packaging and identical marks on products of unknown quality threatens to sweep away everything ATHI has worked tireless for since the inception of the company.

ATHI's product sells for approximately $90.00 per box of 10 tea bags, making it an expensive purchase that most consumers would carefully consider. The Defendants' product retails for almost the same price, at $88.00 per box. Since the products bear the same trademarks

and retail for approximately the same amount, the purchaser's sophistication or knowledge of specialty tea does not necessarily mean that they are immune to source confusion. *See In re Shell Oil Co.*, 992 F.2d 1204, 1208 (Fed. Cir. 1993) (indicating that "even sophisticated purchasers can be confused by very similar marks").

Based on the eight factors described above, Plaintiff has shown that there is a likelihood of confusion between its mark and that of the Defendants, and Plaintiff will have no trouble proving trademark infringement against the Defendants. Defendants' unauthorized use, distribution, offer to sell, and sale of products bearing the Plaintiff's trademarks has caused and is likely to continue to cause confusion, mistake, and deception as to origin, sponsorship or approval of the Defendants' product. Thus, Plaintiff has shown that there is *more* than a reasonable likelihood of success that it will prevail on the merits of the trademark claims against Defendants.

### 4.   Tortious Interference with Prospective Economic Advantage

A plaintiff may sustain a claim of tortious interference with economic advantage when the plaintiff is able to show: (1) the existence of a profitable business relationship, (2) the Defendants' interference with that relationship, (3) the Defendants' use of dishonest, unfair, or improper means, and (4) damage to the Plaintiff's business relationships. *Fonar Corp. v. Magnetic Resonance Plus*, 957 F. Supp. 477, 482 (S.D.N.Y. 1997).

ATHI and its third-party buyers were engaged in a profitable business relationship. Plaintiff's entered into agreements to supply tea to distributors and retailers in return for the payment of money. This was a relationship where both parties received the benefit of their bargain, and that the business relationship between ATHI and the third-party buyers was indeed profitable. *See S. Lee Decl. ¶ 5; Shen Decl. at ¶ 1.*

"Under New York law, in order for a party to make out a claim for tortious interference with prospective economic advantage, the defendant must interfere with the business relationship directly; that is, the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff". *G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762 (2d Cir. 1995). Here, Defendants have indeed interfered with a profitable business relationship. By sending the letter dated March 15, 2013 to customers of ATHI and the widespread publication of the same in the *Sing Tao Daily*, Defendants have engaged in the exact type of behavior described above.

That letter was directed to the third party buyers and, though there was already a business relationship established between ATHI and the buyers, the letter had the effect of forcing buyers to consider stopping purchases from ATHI. In essence, this letter may have convinced the buyers to not continue their already established business relationship or not enter into any new business relationship with the plaintiff. *See S. Lee Decl. ¶ 8; Shen Decl. at ¶ 6-7; Li Decl. at ¶ 10.* It is very likely that this prong of the requirements for tortious interference with prospective economic advantage will be satisfied.

"[I]f the defendant's interest is intended, at least in part, to advance its own competing interests, the claim [for tortious interference with prospective economic advantage] will fail unless the means employed include criminal or fraudulent conduct." *Fonar Corp.*, 957 F.Supp 477 at 483 (quoting *PPX Enterprises v. Audio Fidelity Enterprises*, 818 F.2d 266 (2d Cir. 1987)).

Here, Defendants <u>have</u> used fraudulent means to tortuously interfere with the Plaintiff's prospective economic advantage. In the above mentioned letter dated March 15, 2013, Defendants claimed to own Plaintiff's trademark, which they do not, and used that assertion to intimidate customers to stop buying from ATHI by threat of legal action. Claiming ownership of

the Plaintiff's mark, with the apparent authority to back up their threats, raises the level of the falsity found in the letter to fraudulent. This false statement was intended as an assertion to mislead and intimidate buyers into no longer doing business with ATHI and is therefore fraudulent. Based on the information above, it is very likely that this prong of the tortious interference with prospective economic relations test will be satisfied.

*Fonar Corp.* states that in order to show damage to the plaintiff's business relationships, the plaintiff must show that the third parties that were interfered with chose to not continue the business relationship. *Fonar Corp.*, 957 F. Supp. at 484. In this case, since the letter has been distributed by Defendants, ATHI has not received its routine orders for tea from its buyers. *See S. Lee Decl. ¶ 8; Li Decl. at ¶ 10.* In a market where sales are rather continuous, this is strong evidence that these third party buyers may be choosing to end their business relationship with ATHI. ATHI has thus suffered the requisite damage required for tortious interference with prospective economic advantage and will likely satisfy this prong of the claim.

Based on the facts stated above, ATHI engaged in profitable business relationships with many third-party purchasers, Defendants interfered with those profitable business relationships in a fraudulent manner, and that fraudulent interference caused damage to ATHI's business relationships. Because ATHI is likely to succeed on this claim, a temporary restraining order preventing Defendants from further communications with ATHI customers and ordering a public retraction of the March 15th letter before a preliminary injunction hearing or trial on the merits would be appropriate.

**B.**    **ATHI faces irreparable harm if Defendants are not enjoined**

Irreparable harm is harm that for which "a monetary award cannot be adequate." *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir. Vt. 1979). A "[l]ikelihood of

confusion is itself strong evidence that in the absence of an injunction, [one] might face

irreparable harm." *Le Sportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 79 (2d Cir. N.Y. 1985). Here,

ATHI will suffer irreparable harm by the confusion that the sale of Defendants' products will

create because no amount of money is able to rectify consumer confusion. Once a consumer

becomes unsure of the quality or source of the product he is buying, it is very difficult, if not

impossible, to regain the confidence of that consumer.

Even the prospective loss of goodwill can be sufficient to support a finding of irreparable

harm. *Tom Doherty Ass'n Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37-38 (2d Cir. 1995). ATHI will

be irreparably harmed by a loss of business goodwill because its customers are being told by the

Defendants' that the ATHI product is not genuine.  The Defendants' actions suggest strongly that

consumers are indeed confused because they are now being told that a product they have

purchased loyally in the past is not legitimate. As the Second Circuit has explained, the "loss of

... an on-going business representing many years of effort and the livelihood of its [...] owners,

constitutes irreparable harm" that cannot be fully compensated by monetary damages.  *Roso-*

*Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co.*, 749 F.2d 124, 126 (2d Cir. N.Y.

1984).

Plaintiff has been distributing its TIBETAN BAICAO TEA product for over three years

in Asian communities in the New York and California markets.  Its customers have come to rely

on the ATHI brand as a symbol of quality.  Now that the Defendants are threatening ATHI

distribution customers with claims that the Defendants' are the true owners of the TIBETAN

BAICAO TEA mark, those customers are now questioning whether or not they should continue

doing business with ATHI. Further, these customers may indeed cease doing business with

ATHI if only to protect themselves from any theoretical legal ramifications. Not only have

Defendants' actions confused consumers, but these actions have lowered the reputation of ATHI with its customers by tarnishing its goodwill.

As a direct and proximate result of Defendants' trademark infringement and acts of unfair competition, Plaintiff has suffered and will continue to suffer losses of income, profits and goodwill while Defendants have and will continue to unfairly acquire income, profits and goodwill. Defendants' false designation of origin by use of Plaintiff's trademark and acts of unfair competition will continue to cause irreparable injury to Plaintiff if Defendants are not restrained by this Court from further violation of Plaintiff's rights. Plaintiff has no adequate remedy at law and a temporary restraining order should be granted.

### C. A balance of hardships tips decidedly in ATHI's favor and the public interest would not be disserved by the issuance of the order

Injunctive relief is appropriate when the balance of hardships tips decidedly in favor of the movant. In deciding this, a court must assess the relevant harm to both the movant and non-movant in light of the injunctive relief. "The relevant harm is the harm that (a) occurs to the parties' legal interests and (b) cannot be remedied after a final adjudication, whether by damages or permanent injunction." *Salinger*, 607 F.3d 81.

In this instance, if injunctive relief does not issue, ATHI will suffer harm to its legal interests in the form of customer confusion, brand dilution, lost sales to customers and retailers, and damage to its professional goodwill. This potential harm to ATHI far outweighs the loss of sales that Defendants may sustain if the injunctive relief issues. Further, the losses that ATHI will suffer if injunctive relief is not granted cannot be able to be remedied by court order after a hearing or trial. Once lost, the damage to ATHI's brand, goodwill, and the loss of its customers will not be able to be restored. Because the potential harm to ATHI if the injunction does not

issue far outweighs the potential harm to Defendants if the injunction does issue, the balance of hardships tips decidedly in favor of ATHI.

Finally, the public interest would not be disserved by issuance of the temporary restraining order. As mentioned above, the sole purpose for such an order is to preserve the status quo until either a hearing on the application for a preliminary injunction or a trial on the merits. *Granny Goose Foods, Inc.*, 415 U.S. 423. In this case, where Defendants are baldly infringing on both the copyrights and trademarks of the Plaintiff, the public interest would not be disserved by issuance of the order temporarily restraining Defendants from interfering with American Tibetan Health Institute Inc.'s business relations with its clients, ordering Defendants to retract their March 15th letter, and ordering Defendants to issue a public apology. Furthermore, an order other than an ex parte seizure order is not adequate to achieve the purposes of 17 U.S.C. § 501. Such an order will protect ATHI as a business, ATHI's intellectual property, and purchasers of the TIBETAN BAICAO TEA products.

## VI.   CONCLUSION

Preliminary injunctive relief is proper because Plaintiff is likely to succeed on the merits of its copyright, trademark, and tort claims, Plaintiff is likely to suffer irreparable harm if the relief sought is not granted, the balance of hardships weighs in Plaintiff's favor, and the relief sought is in the public interest. The temporary restraining order is necessary as Defendants' current and ongoing use of Plaintiff's copyrighted material and trademarks is causing immediate harm to Plaintiff. Accordingly, Plaintiff requests this Court issue a temporary restraining order, impoundment by Seizure Order, and order to show cause regarding preliminary injunction in the form submitted by Plaintiff.

Dated: April 25, 2013                    Respectfully submitted,


By: _____

Phillip Abramowitz, Esq.
KLOSS, STENGER & LOTEMPIO
*Attorneys for Plaintiff,*
*American Tibetan Health Institute, Inc.*
69 Delaware Avenue, Suite 1003
Buffalo, New York 14202
Telephone: (716) 853-1111
Email: office@klosslaw.com

David W. Kloss, Esq.
KLOSS, STENGER & LOTEMPIO
69 Delaware Avenue, Suite 1003
Buffalo, New York 14202
Telephone: (716) 853-1111
Email: dwkloss@klosslaw.com

Of Counsel to:

Otto O. Lee
INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113
Telephone: (408) 286-8933
Facsimile: (408) 286-8932