IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN TIBETAN HEALTH INSTITUTE, INC., <br><br> Plaintiff, <br><br> v. <br><br> KAM NG, C&L INTERNATIONAL TRADING INC., KANG LI TRADING INC., and, K&C INTERNATIONAL TRADING INC., <br><br> Defendants. | Case No.: 13-CV-02763 (LLS) <br><br> **FIRST AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE, DECLARATORY, AND OTHER RELIEF** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff American Tibetan Health Institute, Inc. ("Plaintiff" or "ATHI"), for its First Amended Complaint against Defendants Kam Ng, C&L International Trading Inc. ("C&L"), Kang Li Trading Inc. ("KLT"), and K&C International Trading Inc. ("K&C") (collectively, "Defendants"), alleges as follows:

## PARTIES

1.      Plaintiff ATHI is a California corporation with its principal place of business at 100 Old County Road, Suite 102A, Brisbane, California 94005.

2.      On information and belief, Defendant Kam Ng is an individual residing in the State New York who has done business, including wrongful actions alleged herein, in the State of New York and in this District.

3.      On information and belief, Defendant C&L is a New York corporation with its principal place of business at 84 Hester Street, New York, New York 10002 which has done business, including wrongful actions alleged herein, in the State of New York and in this District.

1

4.      On information and belief, Defendant KLT is a New York corporation with its principal place of business at 84 Hester Street, New York, New York 10002 which has done business, including wrongful actions alleged herein, in the State of New York and in this District.

5.      On information and belief, Defendant K&C is a New York corporation with its principal place of business at 84 Hester Street, New York, New York 10002 which has done business, including wrongful actions alleged herein, in the State of New York and in this District.

6.      Kam Ng, C&L, KLT, and K&C shall also be referred to individually as a "Defendant" and the named "Defendants" herein. Plaintiff is informed and believes and thereon alleges that each Defendant named herein was and is the agent, co-venturer, partner, or otherwise the agent or principal for each other Defendant and that each Defendant acted within the course and scope of his agency in doing the things herein alleged. The true names and capacities of the Defendants named and sued herein as DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint when their true names and capacities have been ascertained. Plaintiff is informed and believes that each of the fictitiously named Defendants is in some way responsible for the acts and omissions hereafter set forth. Plaintiff is further informed and believes and thereon alleges that each of the fictitiously named Defendants was the agent of one or more of the other Defendants named herein, and in doing or omitting to do the acts hereinafter alleged, was acting within the course and scope of that agency and with the knowledge and consent, whether express or implied, of each of said other Defendants. Hereafter, a reference to "Defendants" shall mean "Defendants and each of them" unless the context specifies otherwise.

## JURISDICTION

7.     This is an action for, *inter alia*, federal trademark infringement and federal

trademark counterfeiting in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1),

trademark infringement and false designation of origin in violation of Section 43(a) of the

Lanham Act, 15 U.S.C. § 1125(a), copyright infringement under Chapter 5 of the Copyright Act,

17 U.S.C. § 501, and counterfeiting under 18 U.S.C. § 2318(e). This Court has subject matter

jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

8.     All New York state law claims alleged herein arise under the same nucleus of

operative facts as the federal causes of action, and are therefore part of the same case or

controversy as the federal causes of action. Accordingly, the Court has supplemental jurisdiction

over Plaintiff's state law claims under 28 U.S.C. § 1367.

9.     Further, Plaintiff is a corporation and citizen of the State of California. Kam Ng

resides in and is a citizen of the State of New York. C&L, KLT, and K&C are each corporations

and citizens of the State of New York. Diversity of citizenship exists between Plaintiff and each

of the Defendants. The amount in controversy also exceeds the statutory amount of $75,000.

Therefore, the Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.

10.     Defendants' wrongful acts were committed in this District, within the jurisdiction

and venue of this Court. Among other things, Defendants have advertised their goods under the

infringing trademarks in this State and District and have sold such goods under the infringing

marks to retail stores which sell to the public within this State and District. Defendants have

further acted to unlawfully interfere with Plaintiff's business relationships and sold unlawful

copies of Plaintiff's copyrighted product packaging within this State and District. This Court thus

has personal jurisdiction over Defendants.

## VENUE

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400 as the

Defendants may be found and transact business in this District and a substantial part of the

events giving rise to the claims alleged herein occurred and are continuing to occur in this

District.

## FACTUAL BACKGROUND

12.     Plaintiff ATHI is a corporation engaged in the business of manufacturing and

selling tea under the trademark TIBETAN BAICAO TEA, as well as the trademark consisting of

Chinese characters which translate to "TIBETAN BAICAO TEA" in English (the "Chinese

Characters Mark" herein). Plaintiff further uses a trademark comprising a stylized representation

of a horse (the "Horse Design Mark" herein) and a trademark comprising a stylized

representation of a teacup next to a scroll and inkpot (the "Scroll Design Mark" herein) in

connection with its tea products. Plaintiff created, owns, and was the first to use each of these

trademarks. Plaintiff's tea is packaged in unique and original product packaging.

13.     On or about April 8, 2009, Stan Lee created the original visual work known as

"Tibetan Baicao Tea packaging," which is copyrightable subject matter under the Copyright Act,

17 U.S.C. §101, *et seq.* Upon Stan Lee's death in 2009, the copyright for the "Tibetan Baicao

Tea packaging" work transferred to Shirley Lee through inheritance. Shirley Lee complied in all

respects with the provisions of the Copyright Act, and on April 10, 2013, registered the copyright

for the "Tibetan Baicao Tea packaging" work with the United States Copyright Office

("Copyright Office") and secured Registration No. VA 1-855-049, a copy of which is attached

hereto as Exhibit 1. By written instrument effective April 10, 2013, Shirley Lee assigned all

right, title, interest, and liabilities in and to the copyright in the "Tibetan Baicao Tea packaging"

work, and registration therefore, to ATHI. The visual work embodied in ATHI's copyright registration comprises the product packaging with which ATHI has sold and sells its tea.

14.     ATHI, directly or through a predecessor in interest, has used the TIBETAN BAICAO TEA trademark in connection with the sale of tea products anywhere since around April 8, 2009, and in interstate commerce and within this District since at least as early as July 15, 2009. ATHI has used the TIBETAN BAICAO TEA trademark continuously in interstate commerce since that time. Images of ATHI's product packaging and tea products showing use of the mark with ATHI's goods are attached hereto as Exhibit 2.

15.     ATHI is the owner of U.S. Trademark Registration No. 4,330,569 (Application Serial No. 85/577,000) for the trademark TIBETAN BAICAO TEA in standard characters in International Class 030 for "tea," applied for on March 22, 2012 and issued on May 7, 2013 on the Principal Register of the United States Patent and Trademark Office ("USPTO"). A true copy of the certificate of registration for this trademark is attached hereto as Exhibit 11.

16.     ATHI, directly or through a predecessor in interest, has also used the Chinese Characters Mark in connection with the sale of tea products anywhere since around April 8, 2009, and in interstate commerce and within this District since at least as early as July 2009. ATHI has used the Chinese Characters Mark continuously in interstate commerce since that time. Images of ATHI's product packaging and tea products showing use of the Chinese Characters Mark with ATHI's goods are attached hereto as Exhibit 2.

17.     ATHI is the owner of U.S. Application Serial No. 85/894,301 for the Chinese Characters Mark in International Class 030 for "tea," applied for on April 3, 2013 at the USPTO.

18.     ATHI, directly or through a predecessor in interest, has used the Horse Design Mark in connection with the sale of tea products anywhere since around April 8, 2009, and in

interstate commerce and within this District since at least as early as July 15, 2009. ATHI has used the Horse Design Mark continuously in interstate commerce since that time. Images of ATHI's product packaging and tea products showing use of the mark with ATHI's goods are attached hereto as Exhibit 2.

19.     ATHI is the owner of U.S. Trademark Registration No. 4,330,640 (Application Serial No. 85/590,288) for the Horse Design Mark in International Class 030 for "tea," applied for on April 5, 2012 and issued on May 07, 2013 on the Principal Register of the USPTO. A true copy of the certificate of registration for this trademark is attached hereto as Exhibit 12.

20.     ATHI, directly or through a predecessor in interest, has used the Scroll Design Mark in connection with the sale of tea products anywhere since around April 8, 2009, and in interstate commerce and within this District since at least as early as July 15, 2009. ATHI has used the Scroll Design Mark continuously in interstate commerce since that time. Images of ATHI's product packaging and tea products showing use of the mark with ATHI's goods are attached hereto as Exhibit 2.

21.     ATHI is the owner of U.S. Trademark Registration No. 4,330,639 (Application Serial No. 85/590,233) for the Scroll Design Mark in International Class 030 for "tea," applied for on April 5, 2012 and issued on May 07, 2013 on the Principal Register of the USPTO. A true copy of the certificate of registration for this trademark is attached hereto as Exhibit 13.

22.     Plaintiff's goods are sold to retailers and distributors, including without limitation Asian tea and herb stores and Asian markets, which then sell such goods to the consuming public. Plaintiff's tea is consumed by end users to promote good health.

23.     Plaintiff has invested substantial time, effort, and financial resources promoting its TIBETAN BAICAO TEA mark, Chinese Characters Mark, Horse Design Mark, and Scroll

Design Mark in connection with the marketing and sale of its tea products in interstate commerce. Through widespread and favorable public recognition, the trademarks have become assets of considerable value to ATHI as symbols of ATHI, its quality products, and its goodwill. Consumers recognize the marks and associate the marks with Plaintiff. Declarations from ATHI's President Shirley Lee and two of ATHI's distributors, Dr. Qiong Zhang Shen and Anna Li, are attached hereto as Exhibits 3, 4, and 5 respectively and attest to, among other things, the considerable goodwill ATHI has established in its trademarks, consumer recognition of ATHI's goods and trademarks, and ATHI's strong reputation for quality tea products.

24.     ATHI's products have met with considerable market success due to the quality of the products themselves and substantial goodwill associated with ATHI and its trademarks. Due to the reputation and quality of ATHI's tea, ATHI has become a popular target for counterfeiting and infringement, including without limitation the actions of Defendants alleged herein.

25.     On information and belief, Defendants are also engaged in the business of manufacturing and selling tea products and are a direct competitor of Plaintiff.

26.     On information and belief, C&L, KLT, and K&C are effectively the same business as they share the same phone number and business address. On information and belief, Kam Ng is the CEO of KLT and acts on behalf of C&L, KLT, and K&C. On information and belief, C&L, KLT, and K&C share the same or substantially the same stockholders, directors, and officers, and engage in the same or related enterprises. Through Kam Ng, C&L, KLT, and K&C exercise such dominion and control over each other. To allow any of these Defendants to uphold their separateness would permit a fraud and injustice against Plaintiff, so that each of the Defendants is and should be considered as the alter ego of each other, and accordingly each is and should be liable for the conduct of each other as alleged herein.

27.     On information and belief, notwithstanding Plaintiff's established rights in its TIBETAN BAICAO TEA trademark and Chinese Characters Mark, Defendants and each of them adopted and used the confusingly similar marks TIBETAN BAICAO TEA and Chinese characters translating to "TIBETAN BAICAO TEA" in English in connection with the promotion and sale of tea in interstate commerce as early as June 1, 2010. Images of Defendants' product packaging showing use of the marks with Defendants' goods are attached hereto as Exhibit 6. A printout from the website www.us-tt.net, which Plaintiff is informed and believes is owned and operated by Defendants, showing Defendants' goods under the marks available for sale is attached hereto as Exhibit 7.

28.     In contravention of Plaintiff's rights, Kam Ng also sought and obtained a registration on the USPTO's Supplemental Register, Registration No. 4,247,693, for the composite mark combining the text "TIBETAN BAICAO TEA" with the Chinese characters translating to "TIBETAN BAICAO TEA." Kam Ng applied for registration on April 18, 2012 and listed a date of first use in interstate commerce of June 1, 2010. The goods covered under Supplemental Registration No. 4,247,693 are "herbal teas for medicinal purposes" in International Class 005. Because it is merely on the Supplemental Register, this registration for the composite mark is not prima facie evidence of the validity of the mark, ownership of the mark, or the registrant's exclusive right to use the mark in commerce.

29.     Plaintiff has never at any point, explicitly or implicitly, authorized, encouraged, agreed to, or otherwise ratified Defendants' use of or application for either the TIBETAN BAICAO TEA trademark or the Chinese Characters Mark. Defendants' use of marks confusingly similar and identical to Plaintiff's marks is simply an attempt by Defendants to trade

on the good name and goodwill of Plaintiff without incurring the cost and time required to
establish such goodwill legitimately.

30.     On information and belief, Defendants are offering and selling their tea products
under the infringing marks to the same retailers and distributors that also sell Plaintiff's tea
products, namely, Asian tea and herbal stores and Asian markets, which in turn sell the tea
products to the consuming public. On information and belief, end consumers also drink
Defendants' tea to promote good health.

31.     On information and belief, Defendants sent a letter dated March 15, 2013 to
Plaintiff's retailers and distributors, some of them within this District, falsely and unlawfully
stating that "Kang Li Trading Inc. is the sole owner of the Tibetan Baicao Tea trademarks and
has registered the two parts of the trademarks. USTPO [sic] serial numbers are 8557700 and
85601631, respectively." The letter further goes on to threaten Plaintiff's distributors and
retailers with legal action, stating that "Kang Li Trading Inc. has the exclusive right to use the
trademarks for their products under all circumstances. Should we find anyone use the trademarks
without prior permission for any commercial purpose whatsoever, Kang Li Trading Inc. will
immediately pursue all legal actions to the fullest extent permissible by law." The letter is written
on the letterhead of C&L and KLT, and is signed by Kam Ng as CEO of KLT. A copy of the
March 15, 2013 letter is attached hereto as Exhibit 3-A. Copies of the letter as received by one of
Plaintiff's actual retailers, Chung Chou City, Inc., are attached to this Complaint as Exhibit 5-A.

32.     Further, on information and belief, Defendants have placed ads in newspapers
promoting their tea goods under the TIBETAN BAICAO TEA mark and the mark consisting of
Chinese characters translating to "TIBETAN BAICAO TEA." The ads prominently display the
TIBETAN BAICAO TEA mark and the mark consisting of Chinese characters for "TIBETAN

BAICAO TEA" in connection with Defendants' tea products. Additionally, the said ads contain

the March 15, 2013 letter sent by Defendants to Plaintiff's retailers and distributors. Each ad

contains Defendants' statements that "Kang Li Trading Inc. is the sole owner of the Tibetan

Baicao Tea trademarks and has registered the two parts of the trademarks. USTPO [sic] serial

numbers are 8557700 and 85601631, respectively," and that "Kang Li Trading Inc. has the

exclusive right to use the trademarks for their products under all circumstances. Should we find

anyone use the trademarks without prior permission for any commercial purpose whatsoever,

Kang Li Trading Inc. will immediately pursue all legal actions to the fullest extent permissible

by law." On information and belief, Defendants further state in the ads that poor quality and non-

original TIBETAN BAICAO TEA products are appearing in the marketplace non-stop and are

causing confusion and endangering consumers' health. Defendants have run these ads containing

the March 15, 2013 letter in the *SingTao Daily* newspaper at least from March 24, 2013 through

March 31, 2013. Copies of the *SingTao Daily* newspapers containing Defendants' ads are

attached hereto as Exhibit 3-B.

     33.    Defendants do not own the TIBETAN BAICAO TEA trademark or U.S.

Application Serial No. 85/577,000 for the said mark TIBETAN BAICAO TEA as both mark and

application are clearly owned exclusively by Plaintiff. A declaration from Brian I. Marcus, the

attorney of record for Application Serial No. 85/577,000 (Registration No. 4,330,569) who

submitted and prosecuted the application on behalf of ATHI, attests to ATHI's ownership of the

application and is attached hereto as Exhibit 8. Such statement in Defendants' March 15, 2013

letter that KLT or any other Defendant owns the subject trademark and application for the

subject trademark is plainly false and a bald attempt by Defendants to improperly and negatively

influence, interfere with, and co-opt sales of and demand for Plaintiff's tea products sold under the subject mark.

34.    Upon receipt of Defendants' March 15, 2013 letter, Plaintiff's retailers and distributors have, among other things, actually withheld sales of Plaintiff's products bearing its TIBETAN BAICAO TEA mark and the Chinese Characters Mark. As a direct result of Defendants' letter, Plaintiff has experienced loss of sales of goods under its marks and decreased demand for its tea products from its distributors and retailers, and continues to experience such loss of sales and decrease in demand, and corresponding lost profits and lost market share. Plaintiff has received numerous calls from its retailers and distributors concerning Defendants' letter and threat of legal action for selling goods bearing Plaintiff's marks.

35.    As a result of Defendants' letter, Plaintiff's retailers and distributors and consumers have expressed confusion regarding ownership of the TIBETAN BAICAO TEA trademark and application and Chinese Characters Mark and fear over whether they may lawfully sell and buy ATHI's goods under the subject marks. Defendants' improper letter has caused ATHI's retailers and distributors to question whether ATHI's tea products are genuine and to pull ATHI's tea products from their stores for fear of suit. ATHI has suffered and continues to suffer harm to its reputation and goodwill as Defendants' unlawful letter and ads falsely inform retailers, distributors, and consumers that ATHI is not the owner of its own trademarks, and as Defendants trade on the good name of ATHI in leading purchasers to believe that Defendants are the source of goods bearing ATHI's trademarks. Attached hereto as Exhibits 4 and 5 are declarations by two of Plaintiff's retailers, Dr. Qiong Zhang Shen and Anna Li, averring as to their frustration, confusion, and actions upon receiving Defendants' letter. Additionally, letters from Plaintiff's actual retailer Chung Kee USA International Inc. attesting to

consumer confusion and frustration and decreased demand for Plaintiff's products are attached

hereto as Exhibits 3-C and 3-D.

36.     On information and belief, in addition to the March 15, 2013 letter and newspaper

ads, Defendants have further harassed Plaintiff's distributors and retailers in person and over the

phone, demanding removal of Plaintiff's tea products and threatening legal action for non-

compliance. A letter from ATHI's actual retailer Chung Kee USA International Inc. attesting to

such harassment in person and over the phone by Defendants is attached hereto as Exhibit 3-D.

37.     Further, on information and belief, notwithstanding Plaintiff's copyrights for its

tea product packaging, Defendants have also sold and are continuing to sell tea products,

separate from those infringing products shown in Exhibit 6, in packaging that is virtually

identical to Plaintiff's. Plaintiff's investigator Daniel Liu visited Defendants' retail store at 84

Hester Street, New York, New York 10002 on April 5, 2013 and purchased tea from Defendants

in such virtually identical packaging. The only real difference between Plaintiff's packaging and

Defendants' packaging obtained on April 5, 2013 is that Defendants have replaced Plaintiff's

company information and placed "K & C International Trading INC. New York, NY 10002 USA

Tel. 1-2122266811" on the packaging. Plaintiff's investigator Daniel Liu again visited

Defendants' retail store at 84 Hester Street, New York, New York 10002 on April 14, 2013 and

was sold another box of tea by Defendants. The packaging for this tea box obtained on April 14,

2013 is a substantially exact replica of Plaintiff's product packaging. Simply put, Defendants'

packaging is counterfeit of Plaintiff's packaging for its genuine tea products. In addition to

infringing Plaintiff's copyright rights, Defendants' counterfeit packaging also unlawfully uses

Plaintiff's prior TIBETAN BAICAO TEA mark, Chinese Characters Mark, Horse Design Mark,

and Scroll Design Mark. The marks used on Defendants' knockoffs are each identical in

appearance to Plaintiff's marks. On information and belief, Defendants had knowledge of Plaintiff's tea product packaging and copyright for said packaging and intended to trade upon Plaintiff's reputation and goodwill established in such packaging in adopting the counterfeit packaging. Further, on information and belief, Defendants had knowledge of Plaintiff's trademarks and prior use thereof in adopting the counterfeit packaging. Images of Defendants' counterfeit packaging, including both the April 5, 2013 box and the April 14, 2013 box, are attached as Exhibits 9-C and 9-E to this Complaint. Also attached hereto as Exhibit 10 are side-by-side image comparisons of Plaintiff's copyrighted product packaging and the packaging of Defendants obtained on April 5, 2013 and April 14, 2013.

38.     ATHI has never in any way authorized Defendants to copy, reproduce, adapt, or distribute its subject work, nor encouraged, consented to, or otherwise ratified Defendants' use in any manner of its copyrights for its tea packaging, or of any of its trademarks.

39.     As a result of Defendants' infringement and counterfeiting activities and March 15, 2013 letter to Plaintiff's retailers and distributors, Plaintiff has suffered damage in the form of lost sales and profits and lost demand for its tea products. ATHI has further suffered harm to the goodwill and reputation it has built up through considerable expense of time and money. Defendants meanwhile are unfairly trading on the good name of ATHI and reaping unlawful and unjust revenue, income, profits, and goodwill from the use of ATHI's trademarks and copyrighted packaging.

## COUNT I – COPYRIGHT INFRINGEMENT

## AGAINST EACH DEFENDANT

40.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 39 of this Complaint as though fully set forth herein.

41.     Plaintiff is the owner of the copyright for its unique designs for its original tea product packaging registered with the Copyright Office as Registration No. VA 1-855-049. Plaintiff's visual work titled "Tibetan Baicao Tea packaging" and embodied in such registration is wholly original to Plaintiff, is copyrightable subject matter, and is entitled to protection under the copyright laws of the United States.

42.     On information and belief and as alleged hereinabove at Paragraph 37, Defendants have engaged in copying, reproducing, adapting, distributing, and otherwise using the copyrighted material of ATHI's original tea product packaging. Defendants have sold and are selling tea in product packaging that is virtually identical to and a wholesale copy of ATHI's original product packaging registered with the Copyright Office. Defendants' packaging, including the boxes of tea obtained by Plaintiff April 5, 2013 and April 14, 2013, is a counterfeit of Plaintiff's copyrighted packaging with no variation from the unique and copyrightable elements of Plaintiff's work.

43.     ATHI has never authorized Defendants to copy, reproduce, adapt, distribute, or otherwise use its copyrighted tea product packaging, nor derivative works of said packaging.

44.     Plaintiff is entitled to and prays for the relief of, among other things, a temporary restraining order and an injunction restraining Defendants and their officers, directors, employees, agents, representatives, and persons acting on their behalf from engaging in further acts of copyright infringement because irreparable harm is imminent as a result of Defendants'

conduct. Plaintiff is further entitled to and prays for injunctive relief allowing impoundment and destruction of Defendants' infringing goods, and such other injunctive relief as the Court deems just and proper to restrain Defendants' infringing activities.

45.     Plaintiff is further entitled to recover from said Defendants its pecuniary damages sustained by Plaintiff as a result of their copyright infringement. Plaintiff is also entitled to recover Defendants' gains, profits, and unjust enrichment obtained as a result of their copyright infringement, as well as statutory damages and attorneys' fees and costs.

## COUNT II – FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114(1) AGAINST EACH DEFENDANT

46.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 45 of this Complaint as though fully set forth herein.

47.     The above alleged acts of Defendants constitute infringement of each of ATHI's federally registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

48.     ATHI has sold its tea products in interstate commerce under the TIBETAN BAICAO TEA mark, and in packaging bearing marks including the Horse Design Mark and Scroll Design Mark since at least July 15, 2009. It has used these marks continuously in interstate commerce since that time.

49.     ATHI is the owner of U.S. Registration No. 4,330,569 for the TIBETAN BAICAO TEA trademark in standard characters in International Class 030 for "tea." This registration issued on May 07, 2013 on the Principal Register of the USPTO. A true copy of the certificate of registration for this mark is attached hereto as Exhibit 11. The TIBETAN BAICAO TEA trademark and federal registration therefore are valid and subsisting.

50.    ATHI is the owner of U.S. Registration No. 4,330,640 for the Horse Design Mark in International Class 030 for "tea." This registration issued on May 07, 2013 on the Principal Register of the USPTO. A true copy of certificate of registration for this mark is attached hereto as Exhibit 12. The Horse Design Mark and federal registration therefore are valid and subsisting.

51.    ATHI is the owner of U.S. Registration No. 4,330,639 for the Scroll Design Mark in International Class 030 for "tea." This registration issued on May 07, 2013 on the Principal Register of the USPTO. A true copy of the certificate of registration for this mark is attached hereto as Exhibit 13. The Scroll Design Mark and federal registration therefore are valid and subsisting.

52.    Despite ATHI's established rights in the TIBETAN BAICAO TEA mark, Defendants and each of them adopted and used in interstate commerce the confusingly similar and identical mark TIBETAN BAICAO TEA and mark consisting of Chinese characters translating to "TIBETAN BAICAO TEA" in connection with the advertising and sale of tea products. On information and belief, and according to Kam Ng's Supplemental Registration No. 4,247,693, Defendants began using the TIBETAN BAICAO TEA mark and mark consisting of Chinese characters for "TIBETAN BAICAO TEA" in connection with tea products in interstate commerce only as early as June 1, 2010, subsequent to Plaintiff's first use of its mark. Examples of Defendants' use of the TIBETAN BAICAO TEA mark and mark consisting of Chinese characters translating to "TIBETAN BAICAO TEA" on infringing goods are attached hereto as Exhibits 6 and 9-F. The marks are prominently featured on Defendants' product packaging and Defendants' clearly intend for consumers and purchasers to focus upon the marks in making the purchasing decision. Defendants have also used the TIBETAN BAICAO TEA mark and mark

consisting of Chinese characters translating to "TIBETAN BAICAO TEA" in advertising for their tea products, including without limitation in the *SingTao Daily* newspaper.

53.     Defendants offer for sale their tea goods under the TIBETAN BAICAO TEA mark and mark consisting of Chinese characters translating to "TIBETAN BAICAO TEA" to many of the same retailers and distributors to which Plaintiff offers for sale and sells its tea goods under the TIBETAN BAICAO TEA mark. Plaintiff's and Defendants' goods are likely to be encountered by the same purchasers in the same location, and these purchasers are likely to be confused as to source as a result of the same mark appearing on Plaintiff's and Defendants' goods.

54.     Without ATHI's consent, Defendants have used the TIBETAN BAICAO TEA mark and mark consisting of Chinese characters translating to "TIBETAN BAICAO TEA" in connection with the sale, offering for sale, distribution, or advertising of their goods.

55.     Defendants are using marks, TIBETAN BAICAO TEA and Chinese characters translating to "TIBETAN BAICAO TEA," that are identical or confusingly similar to Plaintiff's prior TIBETAN BAICAO TEA mark registered with the USPTO in standard characters. There is no real difference, in visual appearance, sound, meaning, or any other criterion, between the marks themselves. The parties' marks are further used for the same goods, namely, tea. The parties' tea goods are also purchased and used by consumers for the same purpose, namely, to promote good health.

56.     Additionally, consumers have actually been confused as to the source of the parties' tea goods under the subject marks. Following Defendants' March 15, 2013 letter and newspaper ads containing the letter, ATHI's retailers and distributors expressed confusion as to whether the goods of ATHI under the subject mark it had in stock were genuine, and as to which

party, Plaintiff or Defendants, is the source of legitimate tea under the TIBETAN BAICAO TEA

mark. Attached hereto as Exhibits 4 and 5 are declarations from ATHI's retailers Dr. Qiong

Zhang Shen and Anna Li describing the state of confusion caused amongst consumers by

Defendants' confusingly similar marks and unlawful actions.

      57.    A comparison of the parties' product packaging underscores the confusing

similarity and identical nature of the parties' marks as the tea boxes of both Plaintiff and

Defendants show the TIBETAN BAICAO TEA mark in script lettering featured prominently at

the top of at least one side of such boxes. Both Plaintiff's and Defendants' packaging also feature

the marks in Chinese characters in stylized format prominently on multiple sides of such boxes.

The images of Plaintiff's packaging shown in Exhibit 2 and of Defendants' infringing packaging

shown in Exhibits 6 and 9-F demonstrate such confusingly similar use of the subject marks.

Plaintiff's entire TIBETAN BAICAO TEA mark is encompassed in Defendants' use. Plainly,

Defendants have copied not only Plaintiff's trademark, but also the position of the trademark on

packaging, and color and general layout of such packaging. Defendants' actions are likely to lead

the public to conclude, incorrectly, that their goods originate with or are authorized by Plaintiff,

which has damaged and will continue to damage both Plaintiff and the public.

      58.    On information and belief, Defendants and each of them have advertised and

offered their tea products for sale under the TIBETAN BAICAO TEA mark and mark consisting

of Chinese characters for "TIBETAN BAICAO TEA" with the intention of misleading,

deceiving, or confusing consumers as to the source of its goods and of trading upon ATHI's

reputation and goodwill, and said Defendants have accomplished these effects.

      59.    On information and belief and as alleged hereinabove and specifically at

Paragraph 37, Defendants have engaged in further unlawful use of Plaintiff's prior TIBETAN

BAICAO TEA mark, Horse Design Mark, and Scroll Design Mark in connection with the sale of tea. Defendants have used and are using Plaintiff's identical marks on counterfeit product packaging, thereby holding out what appears to consumers to be Plaintiff's tea product as their own. Images of Defendants' counterfeit tea packaging showing use of each of Plaintiff's registered marks are attached hereto as Exhibits 9-C and 9-E. Defendants' counterfeiting actions are likely and clearly are intended to lead the public and consumers of tea used for health purposes to conclude, incorrectly, that their goods originate with or are authorized by Plaintiff, which has damaged and will continue to damage both Plaintiff and the public. Plaintiff has not authorized Defendants to use any of its marks in any way whatsoever.

60.     Defendants have engaged in their infringing activities despite having constructive notice of Plaintiff's federal registration rights under 15 U.S.C. § 1072, and upon information and belief, despite having actual knowledge of Plaintiff's use and registration of the TIBETAN BAICAO TEA mark, Horse Design Mark, and Scroll Design Mark. Defendants and each of them clearly know of Plaintiff's registered marks as they falsely asserted ownership of Plaintiff's Application Serial No. 85/577,000 and have counterfeited Plaintiff's marks.

61.     Defendants' unauthorized use of Plaintiff's registered TIBETAN BAICAO TEA mark, Horse Design Mark, and Scroll Design Mark in interstate commerce as alleged hereinabove constitutes federal trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and is likely to cause continued consumer confusion, mistake, or deception.

62.     As a direct and proximate result of Defendants' federal trademark infringement, Plaintiff has suffered and will continue to suffer loss of revenue, income, profits, and goodwill, which will increase if not enjoined, and Defendants have and will continue to unfairly acquire revenue, income, profits, and goodwill.

63.     Defendants' federal trademark infringement will cause further irreparable harm if Defendants are not restrained by this Court from further violation of Plaintiff's rights. Plaintiff has no adequate remedy at law for all of the harm being caused to Plaintiff, particularly in respect of the loss of Plaintiff's goodwill and market share due to Defendants' infringement.

64.     Plaintiff is thus entitled to and hereby requests a temporary restraining order and immediate injunction as well as additional preliminary and permanent injunction restraining the Defendants from current and future infringement of Plaintiff's trademarks and allowing seizure and destruction of Defendants' infringing goods, a bar on Defendants' marketing and sales activities involving the infringing goods, and such other injunctive relief as the Court deems just and proper to restrain Defendants' infringing activities. Plaintiff further seeks and is entitled to Defendants' profits as well as other pecuniary damages and costs sustained by Plaintiff as a result of Defendants' blatant infringement and related misconduct. Plaintiff is also entitled to treble damages and recovery of attorneys' fees as a result of Defendants' willful and intentional infringement of Plaintiff's trademarks. Defendants acted with knowledge of Plaintiff's rights and intended to infringe Plaintiff's marks and cause confusion amongst consumers as to connection with, and otherwise in respect of, Plaintiff's marks.

## COUNT III – FEDERAL TRADEMARK COUNTERFEITING UNDER 15 U.S.C. §
## 1114(1) AGAINST EACH DEFENDANT

65.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 64 of this Complaint as though fully set forth herein.

66.     The above alleged acts of Defendants constitute counterfeiting of each of ATHI's federally registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

67.     ATHI has used the TIBETAN BAICAO TEA mark, Horse Design Mark, and Scroll Design Mark continuously in interstate commerce since at least July 15, 2009 in connection with its tea products. Plaintiff has invested substantial time, effort, and financial resources promoting its subject marks in connection with the marketing and sale of its goods in interstate commerce. The consuming public recognizes the distinctive TIBETAN BAICAO TEA trademark, Horse Design Mark, and Scroll Design Mark and associates the marks with Plaintiff.

68.     Plaintiff's TIBETAN BAICAO TEA mark, Horse Design Mark, and Scroll Design Mark are each registered on the Principal Register of the USPTO in International Class 030 for "tea." Defendants' Counterfeit Goods are tea products. True copies of these registrations are attached hereto as Exhibits 11 to 13.

69.     As alleged hereinabove, Defendants have offered for sale and sold in interstate commerce counterfeit tea products, the packaging for which is shown in Exhibits 9-C and 9-E (the "Counterfeit Goods" herein). The Counterfeit Goods bear the TIBETAN BAICAO TEA mark, Horse Design Mark, and Scroll Design Mark in identical form to Plaintiff's registered trademarks. Simply put, the Counterfeit Goods are straight knockoffs of Plaintiff's genuine tea products and use marks that are identical to Plaintiff's registered marks.

70.     Defendants' use of Plaintiff's registered trademarks on its Counterfeit Goods is likely to cause confusion or mistake or to deceive consumers into believing that Plaintiff is the source of Defendants' goods. Plaintiff did not authorize or license the use of its mark on Defendants' Counterfeit Goods.

71.     On information and belief, Defendants have advertised and offered their Counterfeit Goods for sale using the TIBETAN BAICAO TEA mark, Horse Design Mark, and Scroll Design Mark with the intention of misleading, deceiving, or confusing consumers as to the origin of its goods and of trading on Plaintiff's reputation and goodwill.

72.     Defendants' unauthorized use of the TIBETAN BAICAO TEA mark, Horse Design Mark, and Scroll Design Mark in interstate commerce as described above constitutes unlawful trademark counterfeiting under 15 U.S.C. § 1114(1).

73.     As a direct and proximate result of Defendants' trademark counterfeiting, Plaintiff has suffered and will continue to suffer loss of income, profits, and goodwill and Defendants have acquired and will continue to unfairly acquire income, profits, and goodwill.

74.     Defendants' acts of counterfeiting and infringement will cause further irreparable injury to Plaintiff if Defendants are not restrained by this Court from further violation of Plaintiff's rights. Plaintiff has no adequate remedy at law, particularly in respect of the loss of goodwill and market share due to Defendants' infringement.

75.     Plaintiff is thus entitled to and hereby requests a temporary restraining order and immediate injunction as well as additional preliminary and permanent injunction restraining the Defendants from current and future counterfeiting of Plaintiff's trademarks and allowing seizure and destruction of Defendants' Counterfeit Goods, a bar on Defendants' marketing and sales activities involving the Counterfeit Goods, and such other injunctive relief as the Court deems

just and proper to restrain Defendants' counterfeiting. Plaintiff further seeks and is entitled to

Defendants' profits as well as other pecuniary damages and costs sustained by Plaintiff as a

result of Defendants' flagrant counterfeiting and related misconduct. Plaintiff is also entitled to

treble damages, recovery of attorneys' fees, and statutory damages as a result of Defendants'

willful and intentional counterfeiting of Plaintiff's trademarks. Defendants acted with knowledge

of Plaintiff's rights and intended to infringe Plaintiff's rights and cause confusion amongst

consumers as to connection with, and otherwise in respect of, Plaintiff's marks.

<strong><u>COUNT IV – COUNTERFEITING UNDER 18 U.S.C. § 2318(e)</u></strong>

<strong><u>AGAINST EACH DEFENDANT</u></strong>

76.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 75 of this

Complaint as though fully set forth herein.

77.     Defendants have knowingly trafficked in counterfeit documentation or packaging.

Defendants have sold tea to retailers, consumers, and other buyers in product packaging that is a

virtual replica of Plaintiff's product packaging, thus transferring and trading in said tea for

purposes of commercial advantage.

78.     Defendants' tea packaging, including the packaging obtained by Plaintiff's

investigator on April 5, 2013 and the packaging obtained by Plaintiff's investigator on April 14,

2013 as described hereinabove and specifically at Paragraph 37, is counterfeit packaging.

Defendants' packaging is virtually identical to ATHI's and is designed to look genuine when it is

not in order to usurp sales of ATHI's actual product.

79.     Defendants' knowingly created the packaging for their knockoffs intending for

the products to look genuine. The boxes of tea sold by Defendants to Plaintiff's investigator are

wholesale copies of ATHI's original product packaging works. The near replication of Plaintiff's

23

prior original packaging in its entirety in Defendants' packaging itself clearly shows that Defendants' knowingly created and sold the knockoff tea boxes intending for consumers to think they were ATHI's legitimate products and to trade upon ATHI's good name and reputation for quality products.

80.     ATHI owns a valid copyright registration known as "Tibetan Baicao Tea packaging" for its original tea product packaging which Defendants have blatantly counterfeited. ATHI's copyright is registered with the Copyright Office as Registration No. VA 1-855-049, a copy of which is attached hereto as Exhibit 1.

81.     Defendants have thus violated 18 U.S.C. § 2318 and are liable in civil action to Plaintiff under 18 U.S.C. § 2318(e). Plaintiff is entitled to and prays for the relief of, among other things, a temporary restraining order and an injunction restraining Defendants and their officers, directors, employees, agents, representatives, and persons acting on their behalf from engaging in further counterfeiting because irreparable harm is imminent as a result of Defendants' conduct. Plaintiff is further entitled to and prays for injunctive relief allowing impoundment and destruction of Defendants' counterfeit goods, and such other injunctive relief as the Court deems just and proper to restrain Defendants' counterfeiting.

82.     Plaintiff is further entitled to recover from said Defendants its pecuniary damages sustained by Plaintiff as a result of their counterfeiting. Plaintiff is also entitled to recover Defendants' gains, profits, and unjust enrichment obtained as a result of their counterfeiting, as well as statutory damages and attorneys' fees and costs.

**COUNT V – FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1125(a)**

**AGAINST EACH DEFENDANT**

83.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 82 of this Complaint as though fully set forth herein.

84.     ATHI is the lawful and proper owner of the Chinese Characters Mark and U.S. Application Serial No. 85/894,301 for the said trademark in International Class 030. ATHI has sold tea products in interstate commerce under the Chinese Characters Mark since at least as early as July 2009. ATHI has used the Chinese Characters Mark continuously in interstate commerce since that time.

85.     Plaintiff's Chinese Characters Mark is inherently distinctive as applied to Plaintiff's goods bearing the mark. The term "BAICAO" transliterated from Chinese characters in the mark has no direct translation from Chinese to English and is suggestive, arbitrary, or fanciful for Plaintiff's tea products offered under the mark. Plaintiff's mark as a whole is thus suggestive, arbitrary, or fanciful for Plaintiff's tea offered under the mark.

86.     Despite ATHI's established rights in the Chinese Characters Mark, Defendants and each of them adopted and used in interstate commerce the confusingly similar and identical mark TIBETAN BAICAO TEA and mark consisting of Chinese characters translating to "TIBETAN BAICAO TEA" in connection with the advertising and sale of tea products. On information and belief, and according to Kam Ng's Supplemental Registration No. 4,247,693, Defendants began using the TIBETAN BAICAO TEA mark and mark consisting of Chinese characters for "TIBETAN BAICAO TEA" in connection with tea products in interstate commerce only as early as June 1, 2010, subsequent to Plaintiff's first use of its mark. Examples of Defendants' use of the TIBETAN BAICAO TEA mark and mark consisting of Chinese

characters translating to "TIBETAN BAICAO TEA" on infringing goods are attached hereto as Exhibits 6 and 9-F. The marks are prominently featured on Defendants' product packaging and Defendants' clearly intend for consumers and purchasers to focus upon the marks in making the purchasing decision. Defendants have also used the TIBETAN BAICAO TEA mark and mark consisting of Chinese characters translating to "TIBETAN BAICAO TEA" in advertising for their tea products, including without limitation in the *SingTao Daily* newspaper.

87.    Defendants offer for sale their tea goods under the TIBETAN BAICAO TEA mark and mark consisting of Chinese characters translating to "TIBETAN BAICAO TEA" to many of the same retailers and distributors to which Plaintiff offers for sale and sells its tea goods under the TIBETAN BAICAO TEA mark and Chinese Characters Mark. Plaintiff's and Defendants' goods are likely to be encountered by the same purchasers in the same location, and these purchasers are likely to be confused as to source as a result of the same mark appearing on Plaintiff's and Defendants' goods.

88.    Without ATHI's consent, Defendants have used the TIBETAN BAICAO TEA mark and mark consisting of Chinese characters translating to "TIBETAN BAICAO TEA" in connection with the sale, offering for sale, distribution, or advertising of their goods.

89.    Defendants are using marks, TIBETAN BAICAO TEA and Chinese characters translating to "TIBETAN BAICAO TEA," that are identical or confusingly similar to Plaintiff's prior Chinese Characters Mark. There is no real difference, in visual appearance, sound, meaning, or any other criterion, between the marks themselves. The parties' marks are further used for the same goods, namely, tea. The parties' tea goods are also purchased and used by consumers for the same purpose, namely, to promote good health.

26

90.     Additionally, consumers have actually been confused as to the source of the parties' tea goods under the subject marks, as fully alleged hereinabove at Paragraphs 35 and 56.

91.     A comparison of the parties' product packaging only underscores the confusing similarity and identical nature of the parties' marks as the tea boxes of both Plaintiff and Defendants show the subject marks in Chinese characters in stylized format prominently on multiple sides of such boxes. The images of Plaintiff's packaging shown Exhibit 2 and of Defendants' infringing packaging shown in Exhibits 6 and 9-F demonstrate such confusingly similar use of the subject marks. Plaintiff's entire Chinese Characters Mark is encompassed in Defendants' use. Plainly, Defendants have copied not only Plaintiff's trademarks, but also the position of the trademarks on packaging, and color and general layout of such packaging. Defendants' actions are likely to lead the public to conclude, incorrectly, that their goods originate with or are authorized by Plaintiff, which has damaged and will continue to damage both Plaintiff and the public.

92.     On information and belief, Defendants and each of them have engaged in their infringing activity despite having actual knowledge of Plaintiff's use of and application for the TIBETAN BAICAO TEA mark and Chinese Characters Mark. Defendants and each of them clearly know of Plaintiff's TIBETAN BAICAO TEA mark as they have falsely asserted ownership of Plaintiff's Application Serial No. 85/577,000.

93.     On information and belief, Defendants and each of them have advertised and offered their tea products for sale under the TIBETAN BAICAO TEA mark and mark consisting of Chinese characters for "TIBETAN BAICAO TEA" with the intention of misleading, deceiving, or confusing consumers as to the source of its goods and of trading upon ATHI's reputation and goodwill, and said Defendants have accomplished these effects.

94.     On information and belief and as alleged hereinabove and specifically at Paragraph 37, Defendants have engaged in further unlawful use of Plaintiff's prior Chinese Characters Mark in connection with the sale of tea. Defendants have used and are using Plaintiff's identical mark on counterfeit product packaging, thereby holding out what appears to consumers to be Plaintiff's tea product as their own. Images of Defendants' counterfeit tea packaging showing use of Plaintiff's mark are attached hereto as Exhibits 9-C and 9-E. Defendants' counterfeiting actions are likely and clearly are intended to lead the public and consumers of tea used for health purposes to conclude, incorrectly, that their goods originate with or are authorized by Plaintiff, which has damaged and will continue to damage both Plaintiff and the public. Plaintiff has not authorized Defendants to use any of its marks in any way whatsoever.

95.     Defendants' unauthorized use of Plaintiff's prior Chinese Characters Mark in interstate commerce as described hereinabove constitutes trademark infringement and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and is likely to cause continued consumer confusion, mistake, or deception.

96.     Defendants' unauthorized marketing and sale of its products in interstate commerce using Plaintiff's prior Chinese Characters Mark constitutes use of a false designation of origin or false representation that falsely designates Defendants' tea products as originating from or connected with ATHI, and constitutes use of false descriptions or representations in interstate commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

97.     As a direct and proximate result of Defendants' trademark infringement and unfair competition, Plaintiff has suffered and will continue to suffer loss of revenue, income,

profits, and goodwill, which will increase if not enjoined, and Defendants have and will continue to unfairly acquire revenue, income, profits, and goodwill.

98.     Defendants' trademark infringement and acts of unfair competition will cause further irreparable harm if Defendants are not restrained by this Court from further violation of Plaintiff's rights. Plaintiff has no adequate remedy at law for all of the harm being caused to Plaintiff, particularly in respect of the loss of Plaintiff's goodwill and market share due to Defendants' infringement.

99.     Plaintiff is thus entitled to and hereby requests a temporary restraining order and injunction restraining Defendants from current and future infringement of Plaintiff's trademarks and allowing seizure and destruction of Defendants' infringing goods, a bar on Defendants' marketing and sales activities involving the infringing goods, and such other injunctive relief as the Court deems just and proper to restrain Defendants' infringement. Plaintiff further seeks and is entitled to Defendants' profits as well as other pecuniary damages and costs sustained by Plaintiff as a result of Defendants' blatant infringement and related misconduct. Plaintiff is also entitled to treble damages and recovery of attorneys' fees as a result of Defendants' willful and intentional infringement of Plaintiff's trademarks. Defendants acted with knowledge of Plaintiff's rights and intended to infringe Plaintiff's marks and foster consumer confusion.

## COUNT VI – FALSE DESIGNATION OF ORIGIN UNDER LANHAM ACT § 43(a) AGAINST EACH DEFENDANT

100.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 99 of this Complaint as though fully set forth herein.

101.    Defendants have made a false designation by claiming in their March 15, 2013 letter that KLT is the sole owner of the so-called "Tibetan Baicao Tea trademarks" and U.S.

Application Serial No. 85/577,000. Defendants further state in the letter that KLT "has the exclusive right to use the trademarks for their products under all circumstances." In so stating, Defendants have used Plaintiff's TIBETAN BAICAO TEA mark and Chinese Characters Mark as designations of origin for Defendants' tea goods despite Plaintiff's established rights in said marks. The implication of Defendants' statements is that Plaintiff's TIBETAN BAICAO TEA mark, shown in Serial No. 85/577,000, and Chinese Characters Mark belong to Defendants, and that it is Defendants who offer tea goods under the marks. These statements are patently false as Plaintiff is the exclusive owner of Serial No. 85/577,000 (Registration No. 4,330,569) and has priority rights in both marks.

102.    Defendants have also used the TIBETAN BAICAO TEA mark and the mark consisting of Chinese characters translating to "TIBETAN BAICAO TEA" in advertising for their tea products, including without limitation in the *SingTao Daily* newspaper. In these ads, Defendants have also published the March 15, 2013 letter falsely claiming ownership of Plaintiff's subject marks and application for TIBETAN BAICAO TEA, Serial No. 85/577,000. In so using Plaintiff's subject marks and claiming ownership of Serial No. 85/577,000, Defendants are leading consumers to believe, falsely, that its tea goods originate from Plaintiff and are improperly passing off Defendants' goods under Plaintiff's trademarks.

103.    Defendants have caused such false designation to enter interstate commerce as they sent the letter of March 15, 2013 from New York, New York to Plaintiff's retailers and distributors located throughout the country, including in California and New York. Defendants further placed and published the March 15, 2013 letter in ads in the *SingTao Daily* newspaper, which is sold in interstate commerce.

104.    The false designation was further in connection with the offering of goods and services as Defendants' letter and ads promote Defendants' tea goods to retailers, distributors, and customers as the only legitimate goods under the "Tibetan Baicao Tea trademarks" and attack the tea goods of ATHI under the subject marks as unauthorized and infringing.

105.    Defendants' false designation is likely to cause continued confusion, mistake, or deception as to origin, sponsorship, or approval of Defendants' goods. As alleged hereinabove, ATHI has already received numerous calls from confused retailers and distributors regarding the letter, whether they may continue to sell ATHI's products without incurring liability to Defendants, and which parties' goods originate and are legitimately sold under the subject marks. Further, Defendants' false designation is likely to cause continued confusion, mistake, or deception amongst consumers as to the origin, sponsorship, or approval of Defendants' goods because Defendants are explicitly stating that its tea goods are sold under the TIBETAN BAICAO TEA mark shown in Serial No. 85/577,000 and the Chinese Characters Mark when such statement is utterly untrue. Affiliation and connection with Plaintiff's marks and good name is precisely the implication of Defendants' false designation. Consumers are viewing this misinformation in the marketplace and are getting, and will continue to get the false impression that Defendants' goods originate under the TIBETAN BAICAO TEA mark and the Chinese Characters Mark exactly because Defendants have stated that its goods originate under the marks, despite the reality that Plaintiff is the lawful owner of the TIBETAN BAICAO TEA mark and Serial No. 85/577,000 and the Chinese Characters Mark and the fact that Plaintiff originated the marks in association with the subject tea goods. Confusion and deception is further stoked by the fact that Defendants sell the same products as Plaintiff, namely, tea used for health purposes,

meaning that consumers are more likely to and will in fact believe the false designation put forth by Defendants.

106.    Plaintiff has suffered and continues to suffer irreparable harm from Defendants' false designation as consumers have been, and are being, misled into thinking Defendants' goods actually originate under Plaintiff's marks. Plaintiff thus seeks and is entitled to a temporary restraining order and immediate injunction as well as additional preliminary and permanent injunction restraining the false designation and associated acts of Defendants including, *inter alia*, advertisements, communications, and statements asserting origin of Defendants' goods under Plaintiff's marks, and affirmative retraction of Defendants' March 15, 2013 letter, newspaper ads, and any other communications or statements to the same or similar effect, that is, any statements containing a false designation or other association between the subject marks and goods. Plaintiff also seeks Defendants' profits, income, or other gains accrued from Defendants' misconduct, as well as Plaintiff's pecuniary damages resulting from Defendants' actions, and Plaintiff's costs of bringing suit. Additionally, the present case is an exceptional one warranting the award of attorneys' fees to Plaintiff.

## COUNT VII – FALSE ADVERTISING UNDER LANHAM ACT § 43(a)
## AGAINST EACH DEFENDANT

107.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 106 of this Complaint as though fully set forth herein

108.    As alleged hereinabove, Defendants have misrepresented the nature, source, characteristics, qualities, and/or geographic origin of their tea products in commercial advertisements by publishing the March 15, 2013 letter in newspaper ads run with the *SingTao Daily*, in which Defendants falsely claim ownership of Plaintiff's Application Serial No.

85/577,000, improperly promote their goods under Plaintiff's TIBETAN BAICAO TEA mark

and Application Serial No. 85/577,000 and under the Chinese Characters Mark, and assert

affiliation with and origination under Plaintiff's subject marks. On information and belief,

Defendants further state in the ads that poor quality and non-original "Tibetan Baicao Tea" is

appearing in the marketplace non-stop and is causing confusion and endangering consumers'

health. Given that this statement appears directly adjacent to Defendants' claims regarding

Plaintiff's Application Serial No. 85/577,000, on information and belief, the statement is a

reference to Plaintiff and its tea goods. These statements made by Defendants are false and

misleading.

109.    These false and/or misleading statements of fact actually deceived or tended to

deceive a substantial number of consumers of the subject tea products and were material to

consumers' purchasing decisions. In addition, these false and/or misleading statements of fact

continue to actually deceive or tend to deceive a substantial number of consumers of the subject

tea goods and continue to be material to consumers' purchasing decisions.

110.    On information and belief, Defendants have caused the misrepresentations to

enter interstate commerce by running the subject ads in newspapers purchased and sold in

interstate commerce.

111.    Further, Defendants' acts of false advertising described herein were intended to

cause and have in fact caused deception of the public, misleading prospective purchasers as to

the true characteristics and qualities of Defendants' and Plaintiffs' tea products. Defendants

knew the statements to be false as shown by, *inter alia*, Defendants' explicit identification of

ATHI's U.S. Application Serial No. 85/577,000 for the TIBETAN BAICAO TEA mark in the

ads showing the March 15, 2013 letter and inclusion in the letter of an image of ATHI's

TIBETAN BAICAO TEA mark as it appears in standard characters on the USPTO database, evincing knowledge of ATHI's application and file history before the USPTO, and showing that Defendants accessed ATHI's file for the mark on the USPTO's database in order to obtain the image of ATHI's mark.

112.     As a result of Defendants' acts described above, Plaintiff has suffered and will continue to suffer irreparable harm in the form of damage and injury to its business, reputation, and goodwill. Plaintiff will continue to sustain serious loss of revenues, profits, and market share unless Defendants are preliminarily and permanently restrained and enjoined by the Court from further acts of false advertising. Plaintiff is thus entitled to and seeks an injunction restraining all such false advertising being perpetrated by Defendants and requiring a take-down and affirmative retraction of the same. Plaintiff also requests its pecuniary damages and costs and Defendants' profits, incomes, or other gains obtained from Defendants' false advertising and malfeasance.

## COUNT VIII – FALSE ADVERTISING UNDER NEW YORK STATE LAW AGAINST EACH DEFENDANT

113.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 112 of this Complaint as though fully set forth herein.

114.     As set forth above, Defendants have knowingly disseminated newspaper ads for its tea products in which, in an effort to promote Defendants' tea products, Defendants falsely claim ownership of Plaintiff's subject trademarks and Application Serial No. 85/577,000, assert affiliation with and origination under Plaintiff's subject marks, and with indirect reference to Plaintiff, falsely claim that non-original and poor quality TIBETAN BAICAO TEA products are causing confusion and endangering consumers' health.

115.     These untrue and misleading statements have deceived and are likely to continue to deceive the public and cause confusion as to source, origin, affiliation, and sponsorship amongst purchasers of the subject goods. Additionally, Defendants' untrue and misleading statements were and are likely to continue to be material to consumers' purchasing decisions as evidenced by the actual confusion amongst consumers and cessation of sales caused by said statements.

116.     Plaintiff has suffered, and continues to suffer, irreparable harm as consumers view the false information disseminated by Defendants and believe Defendants' goods are rightfully sold under Plaintiff's subject marks, thereby damaging the unique quality of Plaintiff's products and reputation. Plaintiff is thus entitled to and seeks an injunction restraining all such false advertising being perpetrated by Defendants and requiring a take-down and affirmative retraction of the same. Plaintiff also requests its pecuniary damages and costs and Defendants' profits, incomes, and other gains obtained from its false advertising.

## COUNT IX – CANCELLATION OF REGISTRATION UNDER 15 U.S.C. § 1119 AGAINST KAM NG

117.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 116 of this Complaint as though fully set forth herein.

118.     Notwithstanding ATHI's prior rights in TIBETAN BAICAO TEA trademark, Registration No. 4,330,569 (Application Serial No. 85/577,000), and prior rights in the Chinese Characters Mark, Kam Ng obtained registration on the Supplemental Register, Registration No. 4,247,693, of the composite mark combining the TIBETAN BAICAO TEA mark and Chinese characters translating to "TIBETAN BAICAO TEA." On information and belief, Kam Ng used the composite mark in interstate commerce in connection with the offering for sale and sale of

tea products as early as June 10, 2009. As Kam Ng could only obtain registration on the

Supplemental Register, Kam Ng is entitled to no further rights or presumptions in the mark

beyond those obtained under common law.

119.    As alleged hereinabove, Plaintiff has used the TIBETAN BAICAO TEA

trademark in connection with the sale of tea anywhere since around April 8, 2009, and

continuously in interstate commerce and within this District since at least as early as July 15,

2009. Additionally, ATHI has used the Chinese Characters Mark in connection with the sale of

tea products anywhere since around April 8, 2009, and continuously in interstate commerce and

within this District since at least as early as July 2009. ATHI's use in interstate commerce of the

TIBETAN BAICAO TEA mark and the Chinese Characters Mark predates Kam Ng's, or any

related entity's, use of the composite mark, or either the TIBETAN BAICAO TEA mark or mark

consisting of Chinese characters individually. Plaintiff thus has priority in its marks over Kam

Ng.

120.    Kam Ng's mark shown in Supplemental Registration No. 4,247,693 is essentially

identical to both Plaintiff's TIBETAN BAICAO TEA mark and the Chinese Characters Mark

when the marks are considered in their entireties. Kam Ng's composite mark contains Plaintiff's

entire TIBETAN BAICAO TEA trademark in English text. Plaintiff's TIBETAN BAICAO TEA

trademark is also shown in its entirety within Kam Ng's mark in the Chinese characters of the

mark as the characters translate in English to "TIBETAN BAICAO TEA." The mark shown in

Supplemental Registration No. 4,247,693 also contains Plaintiff's entire Chinese Characters

Mark as the Chinese characters shown in the mark registration are identical to those of the

Chinese Characters Mark. Plaintiff's Chinese Characters Mark is also shown in its entirety

within the mark of Supplemental Registration No. 4,247,693 in the TIBETAN BAICAO TEA

part of the mark in English text. Kam Ng's composite mark is thus virtually identical to each of Plaintiff's subject marks upon a comparison of the marks themselves in their entireties.

121.    The parties' marks are also used for the same goods, namely, tea. The parties' tea goods are also purchased and used by consumers for the same purpose, namely, to promote good health

122.    On information and belief, Kam Ng's goods under the composite mark of his Supplemental Registration are offered to many of the same retailers and distributors to which Plaintiff offers for sale and sells its tea goods under the TIBETAN BAICAO TEA mark and the Chinese Characters Mark. Plaintiff's and Kam Ng's goods are likely to be encountered by the same purchasers in the same location, and these purchasers are likely to be confused as to source as a result of the same mark appearing on Plaintiff's and Kam Ng's goods.

123.    Further, consumers have actually been confused as to the source of ATHI's and Kam Ng's tea goods. Upon viewing Kam Ng's goods under the composite mark in the marketplace and advertisements for Kam Ng's goods, ATHI's retailers and distributors expressed confusion as to whether the goods of ATHI under ATHI's subject marks it had in stock were genuine, and as to which party, ATHI or Kam Ng, is the source of legitimate tea under the TIBETAN BAICAO TEA mark and Chinese Characters Mark.

124.    As a result of the similarity and identity between Kam Ng's mark shown in Supplemental Registration No. 4,247,693 and ATHI's subject marks, as well as the identical tea goods under each party's mark, Kam Ng's mark combining TIBETAN BAICAO TEA and Chinese characters translating to "TIBETAN BAICAO TEA" is likely to cause, and in fact is causing, confusion, mistake, or deception in the trade and among purchasers as to the source, origin, or sponsorship of the parties' respective goods. On information and belief, Kam Ng's

mark further falsely suggests connection with ATHI's name and TIBETAN BAICAO TEA mark and Chinese Characters Mark.

125.    If Kam Ng's mark is permitted to remain on the Supplemental Register, the registration will continue to cause harm to Plaintiff as such registration will continue to cause confusion amongst consumers as to the separate and distinct sources of Plaintiff's goods and Kam Ng's goods and the relationship of Plaintiff to Kam Ng, thereby damaging Plaintiff's goodwill in its marks and resulting in irreparable harm to Plaintiff's business and reputation, all to the detriment of Plaintiff, which has expended considerable sums and effort in promoting the subjects marks. Plaintiff thus believes it will be, and in fact has been, damaged by the continued registration of Supplemental Registration No. 4,247,693.

126.    Pursuant to the allegations stated hereinabove, Plaintiff requests this Court cancel Supplemental Registration No. 4,247,693 according to its authority under 15 U.S.C. § 1119.

## COUNT X – TRADE DRESS INFRINGEMENT UNDER LANHAM ACT § 43(a) AGAINST EACH DEFENDANT

127.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 126 of this Complaint as though fully set forth herein.

128.    ATHI owns protectable trade dress for its tea product packaging as such packaging is inherently distinctive. ATHI's packaging is distinct as to its size and shape as well as combination of colors. The packaging is fairly large for a tea box, and uses green hues for the body of the box, with lettering shown in yellow-gold and design features in gold. The packaging features a smooth, glossy texture and a distinctive silver hologram sticker used to seal the box. The packaging also prominently features Plaintiff's source-indicating and distinctive trademarks, namely, the TIBETAN BAICAO TEA mark in yellow-gold script lettering on the front and back

of the box, the Chinese Characters Mark in yellow-gold lettering on the front of the box, the Horse Design Mark in yellow-gold, red, green, yellow, and purple on the top of the box, and the Scroll Design Mark in green and gold on the front of the box. "TIBETAN BAICAO TEA" is also displayed in Tibetan characters on the front of the box in yellow-gold lettering. Viewing this entire combination of elements in Plaintiff's trade dress, it is clear the trade dress is inherently distinctive and eligible for protection under the Lanham Act. Images showing Plaintiff's distinctive trade dress product packaging are attached hereto as Exhibit 2.

129.    Plaintiff's product packaging is not functional as it does not deprive competitors of alternate designs and thus foreclose competition from the relevant market. There is no limit to how competitors may compose alternate designs for tea boxes. Such boxes may be in different sizes and colors, with different design elements and different trademarks applied to the box. The variety of packaging available for tea is limited only by the bounds of imagination.

130.    ATHI has been using its unique and distinctive trade dress in connection with the sale of tea products continuously in interstate commerce since at least as early as July 2009. Through widespread and favorable public recognition, ATHI's trade dress has become an asset of considerable value to ATHI as a symbol of ATHI, its quality products, and its goodwill. Consumers recognize the trade dress and associate it with Plaintiff.

131.    Notwithstanding Plaintiff's prior rights in its trade dress for tea product packaging, Defendants have used and are using trade dress in connection with the sale of tea products that is likely to cause confusion, or deceive as to sponsorship, affiliation, or connection with the trade dress of Plaintiff. The degree of visual similarity between Plaintiff's trade dress, as shown in Exhibit 2, and Defendants' trade dress, as shown in Exhibit 6, is immense. The size and shape of Plaintiff's and Defendants' boxes are identical. Defendants' use similar shades of green

for the body of their box, and use a similar yellow or gold color for lettering and graphics. The bottoms of the boxes are both white, the boxes have the same glossy texture, and both boxes are sealed with similar silver holographic stickers. Further, Defendants use Plaintiff's TIBETAN BAICAO TEA mark and the mark consisting of Chinese characters translating to "TIBETAN BAICAO TEA" on their trade dress tea box, in a very similar gold color and in a very similar position as Plaintiff uses its subject marks. Defendants' box additionally features "TIBETAN BAICAO TEA" in Tibetan characters. Given this similarity in the entire look of the packaging, there is a strong likelihood that consumers will confuse Plaintiff's trade dress and Defendants' trade dress. Moreover, both Plaintiff and Defendants offer the same goods, namely, specialty tea used to promote good health, and there have been incidents of actual confusion amongst consumers between Plaintiff's and Defendants' goods, as alleged hereinabove. There is a likelihood of confusion as to source of goods under Plaintiff's trade dress and Defendants' trade dress shown in Exhibit 6.

132.    On information and belief, Defendants have been using the trade dress shown in Exhibit 6 in connection with the sale of tea products in interstate commerce since only as early as June 1, 2010. Defendants' unauthorized use of trade dress confusingly similar to Plaintiff's prior distinctive trade dress constitutes trade dress infringement and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). On information and belief, Defendants and each of them have engaged in their infringing activity despite having actual knowledge of Plaintiff's distinctive trade dress, and with the intention of misleading, deceiving, or confusing consumers as to the source of its goods and of trading upon ATHI's reputation and goodwill, and said Defendants have accomplished these effects.

133.    Further, as alleged hereinabove and specifically at Paragraph 37, Defendants have sold and are selling tea in product packaging that is virtually identical to and a wholesale copy of Plaintiff's product packaging. This unlawful use of Plaintiff's packaging by Defendants is likely to confuse, deceive, or mislead consumers and constitutes infringement of Plaintiff's distinctive trade dress. On information and belief, Defendants adopted and used the counterfeit product packaging shown in Exhibits 9-C and 9-E after Plaintiff used its trade dress in interstate commerce and after its goods developed a strong reputation in the marketplace as Defendants' packaging is a substantially identical replica of Plaintiff's packaging. Further, on information and belief, Defendants had knowledge of Plaintiff's trade dress packaging when it adopted and began selling goods under the counterfeit packaging and intended to deceive, mislead, or confuse consumers as to the source of its goods and to trade upon ATHI's reputation and goodwill.

134.    As a result of Defendants' trade dress infringement and unfair competition, Plaintiff has suffered and will continue to suffer loss of income, profits, and goodwill, and Defendants have and will continue to unfairly acquire income, profits, and goodwill. Defendants' trade dress infringement and acts of unfair competition will cause further irreparable harm if the Court does not restrain Defendants from further infringing Plaintiff's rights. Notwithstanding that Plaintiff has incurred pecuniary damages, Plaintiff has no adequate remedy at law, particularly in respect of the loss of goodwill and market share being usurped by Defendants.

135.    Plaintiff is thus entitled to and hereby requests a temporary restraining order and immediate as well as additional preliminary and permanent injunction restraining the Defendants from current and future infringement of Plaintiff's trade dress and allowing seizure and destruction of Defendants' infringing goods, a bar on Defendants' marketing and sales activities involving the infringing goods, and such other injunctive relief as the Court deems just and

proper to restrain Defendants' infringing activities. Plaintiff further seeks and is entitled to Defendants' revenue, profits, income, or other gains accrued from Defendants' misconduct, as well as other pecuniary damages and costs sustained by Plaintiff from Defendants' blatant infringement and related misconduct. Plaintiff is also entitled to treble damages and recovery of attorneys' fees as a result of Defendants' willful and intentional infringement of Plaintiff's trade dress. Defendants acted with knowledge of Plaintiff's rights and intended to infringe the Plaintiff's distinctive trade dress and cause confusion amongst consumers as to connection with ATHI and its unique product packaging.

## COUNT XI – NEW YORK STATE COMMON LAW TRADEMARK INFRINGEMENT AGAINST EACH DEFENDANT

136.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 135 of this Complaint as though fully set forth herein.

137.    Independent of Plaintiff's federal trademark applications, at common law Plaintiff owns the exclusive right to use the TIBETAN BAICAO TEA trademark, Chinese Characters Mark, Horse Design Mark, and Scroll Design Mark (collectively, the "Marks") based on, *inter alia*, the fact that Plaintiff was the first to use these marks in commerce, both interstate and intrastate within the State of New York.

138.    In 2009, Plaintiff adopted and began using the Marks in interstate and intrastate commerce in conjunction with the sale and marketing of the tea products identified hereinabove.

139.    As a result, the Marks became associated in the minds of the public with said tea goods of Plaintiff, and Plaintiff thus owns the exclusive right to use the Marks in connection with said goods.

140.    Subsequent to Plaintiff's use of the Marks in association with the subject goods, Defendants and each of them began using the Marks to market and sell identical or substantially similar goods in the same market for these goods, and Defendants began falsely designating their products as being associated with the Marks in direct competition with Plaintiff.

141.    Defendants' use of the Marks in connection with the subject tea goods has caused, and unless restrained and enjoined will continue to cause, a likelihood that that consumers will be confused about the source of the goods.

142.    Thus, Defendants and each of them have infringed, and continue to infringe, Plaintiff's common law rights in the subject Marks.

143.    As a direct and proximate result of Defendants' common law trademark infringement, Plaintiff has suffered and will continue to suffer loss of revenue, income, profits, and goodwill, which will increase if not enjoined, and Defendants have unfairly acquired and will continue to unfairly acquire revenue, income, profits, and goodwill.

144.    Defendants' common law trademark infringement will cause further irreparable harm if Defendants are not restrained by this Court from further violation of Plaintiff's rights. Plaintiff has no adequate remedy at law for all of the harm being caused to it, particularly in respect of the loss of Plaintiff's goodwill and market share being usurped by Defendants.

145.    Plaintiff is thus entitled to and hereby requests a temporary restraining order and immediate injunction as well as additional preliminary and permanent injunction restraining the Defendants from current and future infringement of Plaintiff's common law trademark rights in the Marks and allowing seizure and destruction of Defendants' infringing goods, a bar on Defendants' marketing and sales activities involving the infringing goods, and such other injunctive relief as the Court deems just and proper to restrain Defendants' infringing activities.

Plaintiff further seeks and is entitled to Defendants' profits as well as other pecuniary damages and costs sustained by Plaintiff as a result of Defendants' blatant infringement and related misconduct. Plaintiff is also entitled to recovery of attorneys' fees as a result of Defendants' willful and intentional infringement of Plaintiff's common law trademark rights. Defendants acted with knowledge of Plaintiff's rights and intended to infringe the Marks and cause confusion amongst consumers as to connection with, and otherwise in respect of, the Marks.

## COUNT XII – NEW YORK STATE LAW UNFAIR COMPETITION
## AGAINST EACH DEFENDANT

146. Plaintiff realleges and incorporates by reference Paragraphs 1 through 145 of this Complaint as though fully set forth herein.

147. The bad faith conduct of Defendants and each of them, as alleged above, has caused actual confusion to retailers, distributors, and other customers who have purchased Plaintiff's tea goods as to the source of Plaintiff's and Defendants' goods, and is causing a continued likelihood of confusion. Defendants' March 15, 2013 letter and newspaper ads falsely claiming ownership of Plaintiffs' subject marks and mark application, sale of counterfeit boxes of tea, use of marks identical to those owned and used by Plaintiff, and use of infringing trade dress, among other things, evince Defendants' intention in adopting its marks, trade dress, and product packaging of capitalizing on Plaintiff's reputation and goodwill and promoting and exploiting confusion amongst consumers.

148. Based on Defendants' unlawful use of Plaintiff's Marks and related misconduct, Defendants have engaged, and continue to engage, in unfair competition and unlawful appropriation of Plaintiff's customers, market share, sales, revenues, profits, income, goodwill and other business value.

149.    As a proximate result of Defendants' unfair competition, Plaintiff has suffered

pecuniary damage, loss of goodwill, and other damages.

150.    In addition, Defendants' unfair competition will cause further irreparable harm if

Defendants are not restrained by this Court from further violation of Plaintiff's rights. Plaintiff

has no adequate remedy at law for all of the harm being caused to it, particularly in respect of the

loss of Plaintiff's goodwill and market share being usurped by Defendants.

151.    Plaintiff is thus entitled to and hereby requests a temporary restraining order and

immediate injunction as well as additional preliminary and permanent injunction restraining the

Defendants' unfair competition, including without limitation all of Defendants' business

activities in which Defendants use Plaintiff's Marks and trade dress as well as efforts to contact

Plaintiff's customers in connection with any reference to the subject Marks.

## COUNT XIII – FRAUD

## AGAINST EACH DEFENDANT

152.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 151 of this

Complaint as though fully set forth herein.

153.    In their March 15, 2013 letter, Defendants made false representations to

Plaintiff's retailers and distributors in asserting sole ownership over Plaintiff's TIBETAN

BAICAO TEA mark and U.S. Application Serial No. 85/577,000, and over the trademark

consisting of Chinese characters translating to "TIBETAN BAICAO TEA" in English, in

connection with tea. As the USPTO's records clearly show, Plaintiff is the owner of Serial No.

85/577,000 (Registration No. 4,330,569). Additionally, as alleged hereinabove, Plaintiff clearly

owns the prior and senior rights to the TIBETAN BAICAO TEA mark and the Chinese

Characters Mark. These false statements to Plaintiff's retailers and distributors were intended to

negatively impact Plaintiff and sales of its tea products and have in fact resulted in injury to Plaintiff.

154.    Defendants made such false statements with knowledge or belief that the representations were false or that they did not have a sufficient basis of information with which to make the statements. Defendants explicitly identify ATHI's U.S. Application Serial No. 85/577,000 for the TIBETAN BAICAO TEA mark in the March 15, 2013 letter and include in the letter an image of ATHI's TIBETAN BAICAO TEA mark as it appears in standard characters on the USPTO database, evincing knowledge of ATHI's application and file history before the USPTO and showing that Defendants accessed ATHI's file for the mark on the USPTO's database in order to obtain the image of ATHI's mark. With knowledge of ATHI's Application Serial No., Defendants necessarily knew that ATHI is listed as the owner of Serial No. 85/577,000, not Defendants. Defendants thus made the false representations with knowledge or belief they were false.

155.    Knowing their statements were false, Defendants intended to induce Plaintiff's retailers and distributors to rely on the statements and refrain from selling Plaintiff's tea products in an effort to harm Plaintiff's reputations and sales. Such intent is evidenced by the blatant falsity of Defendants' representation claiming ownership of Plaintiff's Application Serial No. 85/577,000. There could be no other intent of Defendants, a competitor of Plaintiff, in claiming ownership of Plaintiff's trademark application, despite having clearly viewed Plaintiff's file history with the USPTO, and threatening legal action against those rightfully selling goods under Plaintiff's mark, other than to induce and scare Plaintiff's retailers and distributors into relying on the false statement and ceasing sales of Plaintiff's goods. Although Defendants intended for

Plaintiff's retailers and distributors to rely on its false representations, the Defendants' actions were undeniably intended to reach directly to Plaintiff and its goodwill and good name.

156.    Fearing legal action from Defendants, Plaintiff's retailers and distributors reasonably relied on Defendants' false representations and have refrained from the action of selling goods under ATHI's TIBETAN BAICAO TEA mark and the Chinese Characters Mark. ATHI has received numerous phone calls and notices from its retailers and distributors expressing serious concern over potential legal action from Defendants for selling ATHI's goods and advising they would in fact halt sales of ATHI's goods. In so relying, Plaintiff's retailers and distributors injuriously changed their position, forgoing sales of ATHI's goods to avoid threatened legal action, thereby harming ATHI.

157.    As a direct result of Defendants' fraud, Plaintiff has suffered and continues to suffer damages to its reputation and in terms of lost demand, sales, and profits for its tea products. Defendants meanwhile are using false representations and fraudulent actions to unfairly market and sell its products while improperly trading on Plaintiff's good name.

158.    Defendants' fraud entitles Plaintiff to recovery of all damages suffered as a result of the fraud, including lost sales and profits, as well as Defendants' ill-gotten gain obtained from the fraud.

159.    Further, Defendants' fraud was tortious, malicious, outrageous, oppressive, fraudulent, made in bad faith, and in conscious disregard of ATHI's rights. Accordingly, in addition to general and compensatory damages, ATHI should be awarded exemplary and punitive damages sufficient to punish and make an example of Defendants.

## COUNT XIV – COMMERCIAL DEFAMATION

## AGAINST EACH DEFENDANT

160.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 159 of this Complaint as though fully set forth herein.

161.    As alleged hereinabove, Defendants made false statements in their March 15, 2013 letter to Plaintiff's retailers and distributors and ads in the *SingTao Daily* newspaper in asserting sole ownership over Plaintiff's TIBETAN BAICAO TEA mark and U.S. Application Serial No. 85/577,000, and over the trademark consisting of Chinese characters translating to "TIBETAN BAICAO TEA" in English, in connection with tea. Defendants further falsely stated that KLT "has the exclusive right to use the trademarks for their products under all circumstances."

162.    Based on the foregoing, and because Defendants' false and defamatory statements refer to ATHI's trademarks and ATHI's Application Serial No. 85/577,000, Defendants have made knowing publications of false and derogatory facts about Plaintiff's business of a kind calculated to prevent others from dealing with Plaintiff, to its demonstrable detriment.

163.    Defendants caused the false and defamatory statements to be published by making the statements in the March 15, 2013 letter and sending such letter to Plaintiff's retailers and distributors and in publishing the letter in ads run in the *SingTao Daily* newspaper.

164.    Defendants made the false statements with actual knowledge of their falsity, as alleged hereinabove, and with the intent to harm ATHI by usurping its goodwill and sales of goods under its trademarks.

165.    As a direct and proximate result of Defendants' defamation, Plaintiff has in fact suffered these damages, including without limitation lost business dealings with customers.

166.    Plaintiff has also suffered and continues to suffer actual damages, including without limitation lost demand, lost sales, lost revenues, and lost profits for its tea products.

167.    Additionally, Defendants' false and defamatory statements were tortious, malicious, outrageous, oppressive, fraudulent, made in bad faith, and in conscious disregard of ATHI's rights. Accordingly, in addition to general or special damages, ATHI should be awarded exemplary and punitive damages sufficient to punish and make an example of Defendants.

168.    Defendants' defamation will cause further irreparable harm if Defendants are not restrained by this Court from further violation of Plaintiff's rights. Plaintiff has no adequate remedy at law for all of the harm being caused to it, particularly in respect of the loss of Plaintiff's goodwill and market share being usurped by Defendants.

169.    Plaintiff is thus entitled to and hereby requests a temporary restraining order and immediate injunction as well as additional preliminary and permanent injunction restraining the Defendants' defamation, including without limitation all of Defendants' efforts to contact Plaintiff's customers in connection with any reference to the subject trademarks or trademark applications and Defendants' further publication of ads containing any reference to said trademarks and trademark applications.

## COUNT XV – PRODUCT DISPARAGEMENT

## AGAINST EACH DEFENDANT

170.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 169 of this Complaint as though fully set forth herein.

171.    Defendants made false statements denigrating Plaintiff's products in their March 15, 2013 letter to Plaintiff's retailers and distributors and ads in the *SingTao Daily* newspaper in asserting sole ownership over Plaintiff's TIBETAN BAICAO TEA mark and U.S. Application

Serial No. 85/577,000, and over the trademark consisting of Chinese characters translating to "TIBETAN BAICAO TEA" in English, in connection with tea. Defendants further falsely stated that KLT "has the exclusive right to use the trademarks for their products under all circumstances" and threatened legal action against those selling Plaintiff's tea goods, thereby calling into question in the minds of retailers and consumers the legitimacy of Plaintiff's products. On information and belief, in their newspaper ads which contain the March 15, 2013 letter and refer to Plaintiff's Application Serial No. 85/577,000, Defendants further made the denigrating false statements in reference to Plaintiff that poor quality and non-original TIBETAN BAICAO TEA products are appearing in the marketplace non-stop and are causing confusion and endangering consumers' health.

172.    Defendants made such false statements intentionally and with knowledge of their falsity, causing them to be published to Plaintiff's retailers and distributors and in the *SingTao Daily* newspaper. The false statements were additionally made by Defendants without privilege as the statements were solely made by Defendants with the intent to harm ATHI by usurping its goodwill and sales of goods under its trademarks and by denigrating the quality of ATHI's products.

173.    As a direct and proximate result of Defendants' false statements as alleged above, Plaintiff has in fact suffered these damages, including but not limited to lost business dealings with customers. Plaintiff has also suffered and continues to suffer actual damages, including without limitation lost demand, lost sales, lost revenues, and lost profits for its tea products. Plaintiff has lost actual sales to consumers in the marketplace who believe as a result of Defendants' false statements that Plaintiff's products are not legitimate, despite the opposite being true. Letters from Plaintiff's actual retailer Chung Kee USA International Inc. attesting to

consumer confusion and decreased demand for Plaintiff's products are attached hereto as Exhibits 3-C and 3-D.

174.    Additionally, Defendants' false and disparaging statements were tortious, malicious, outrageous, oppressive, fraudulent, made in bad faith, and in conscious disregard of ATHI's rights. Accordingly, in addition to special damages, ATHI should be awarded exemplary and punitive damages sufficient to punish and make an example of Defendants.

175.    Defendants' intentional false statements will cause further irreparable harm if Defendants are not restrained by this Court from further violation of Plaintiff's rights. Plaintiff has no adequate remedy at law for all of the harm being caused to it. Plaintiff is thus entitled to and hereby requests a temporary restraining order and injunction restraining Defendants' intentional false statements, including without limitation all of Defendants' efforts to contact Plaintiff's customers to threaten legal action for selling Plaintiff's tea products, Defendants' efforts to contact Plaintiff's customers in connection with any reference to the subject trademarks or trademark applications, and Defendants' further publication of ads containing any reference to said trademarks and trademark applications.

## COUNT XVI – TORTIOUS INTERFERENCE WITH CONTRACT
## AGAINST EACH DEFENDANT

176.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 175 of this Complaint as though fully set forth herein.

177.    ATHI has maintained written contracts with its customers, including retailers and distributors, advantageous to ATHI for the sale of its tea goods to said customers.

178.    Defendants have been aware and have had knowledge of ATHI's product order contracts and business relationships with its customers. Such knowledge is evinced by, *inter alia*,

the fact that Defendants sent copies of the March 15, 2013 letter to ATHI's actual retailers and distributors located in California and New York. Further, ATHI's website www.baicaotea.com lists certain of ATHI's retailers and distributors, and on information and belief, Defendants did access ATHI's website and discover retailers and distributors with which ATHI maintained contracts for the sale and purchase of tea.

179.    By virtue of the conduct alleged hereinabove, Defendants have engaged in intentional conduct to disrupt and cause breach of Plaintiff's sales order contracts with its retailers and distributors. In particular, Defendants sent the March 15, 2013 letter to Plaintiff's retailers and distributors with which it maintained contracts for the sale and purchase of tea threatening legal action should said retailers and distributors sell products bearing the TIBETAN BAICAO TEA mark and Chinese Characters Mark (each rightfully belonging to Plaintiff but claimed by Defendants in the letter as belonging to them). Defendants additionally published the letter in newspaper advertisements which have been viewed by Plaintiff's customers. Plaintiff did not authorize or agree to the letter in any way, and in no way whatsoever has authorized Defendants to use or register its TIBETAN BAICAO TEA mark or Chinese Characters Mark. Defendants have specifically targeted Plaintiff's retailers and distributors with the March 15, 2013 letter, and additionally have harassed said retailers and distributors with the improper and baseless threat of lawsuit both in person and over the phone.

180.    Defendants' tortious conduct was utterly without justification as the March 15, 2013 letter is a blatant attempt by Defendants to interfere with, undermine, and usurp Plaintiff's contractual and otherwise commercial relationships with its customers.

181.    As a direct result of Defendants' conduct, including without limitation the subject letter and newspaper ads showing the letter, performance of ATHI's contracts with its retailers

and distributors has been impaired, and ATHI's tea sales have diminished. Among other things, ATHI's retailers and distributors have notified ATHI they cannot sell the tea purchased from ATHI for fear of being sued by Defendants, as was threatened in the March 15, 2013 letter, demonstrating the diminution in demand and, therefore, purchases by ATHI's customers for its tea goods.

182.    As a result of Defendants' tortious interference with Plaintiff's contractual relations with its customers, Plaintiff has suffered and continues to suffer general and special damages as well as harm to its reputation, including without limitation lost demand, sales, and profits for its tea products.

183.    Said Defendants have thus engaged in tortious interference with contract and Plaintiff is accordingly entitled to recover its pecuniary damages.

184.    Said Defendants' interference was tortious, malicious, outrageous, oppressive, fraudulent, made in bad faith, and in conscious disregard of ATHI's rights. Accordingly, in addition to general and compensatory damages, ATHI should be awarded exemplary and punitive damages sufficient to punish and make an example of said Defendants.

185.    Defendants' tortious interference with Plaintiff's contractual relations with its customers will cause further irreparable harm if Defendants are not restrained by this Court from further violation of Plaintiff's rights. Plaintiff has no adequate remedy at law for all of the harm being caused to it, particularly in respect of the loss of Plaintiff's goodwill and market share being usurped by Defendants.

186.    Plaintiff is thus entitled to and hereby requests a temporary restraining order and immediate injunction as well as additional preliminary and permanent injunction restraining the Defendants' tortious interference with Plaintiff's contractual relations with its customers,

including without limitation all of Defendants' efforts to contact Plaintiff's customers in connection with any reference to the subject trademarks or trademark applications and Defendants' further publication of ads containing any reference to said trademarks and trademark applications.

## COUNT XVII – TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST EACH DEFENDANT

187.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 186 of this Complaint as though fully set forth herein.

188.    ATHI has maintained business relationships with its customers, including retailers and distributors, which are commercially advantageous to ATHI in which said retailers and distributors have contacted ATHI regarding purchasing its tea products, and ATHI has fulfilled such orders and requests. ATHI has profited from these business relationships, and these relationships, contractual or otherwise, hold out the promise of continued economic advantage to ATHI in the form of prospective future sales of tea products.

189.    ATHI's relationships with its retailers and distributors have been made publicly known through, among other means, publication on ATHI's website www.baicaotea.com and on the Internet.

190.    Defendants were aware and had knowledge of ATHI's business relationships with its retailers and distributors. Such knowledge is demonstrated by, *inter alia*, the fact that Defendants sent copies of the March 15, 2013 letter to ATHI's actual retailers and distributors located in California and New York. Further, on information and belief, Defendants did access ATHI's website and discover retailers and distributors with which ATHI has maintained business relationships for the sale and purchase of tea.

191.     Based on the foregoing, Defendants engaged in intentional conduct to disrupt and interfere with Plaintiff's relationships with its retailers and distributors, and the prospective economic advantage afforded by these relationships. Among other things, Defendants sent the March 15, 2013 letter to Plaintiff's retailers and distributors with which it maintained contracts for the sale and purchase of tea and the prospect of current and future sales of ATHI's tea products, threatening legal action should said retailers and distributors sell products bearing the TIBETAN BAICAO TEA mark and Chinese Characters Mark (each rightfully belonging to Plaintiff but claimed by Defendants in the letter as belonging to them). Defendants additionally published the letter in newspaper advertisements which have been viewed by Plaintiff's customers. Plaintiff did not authorize or agree to the letter in any way, and in no way whatsoever has authorized Defendants to use or register its TIBETAN BAICAO TEA mark or Chinese Characters Mark. Defendants have specifically targeted Plaintiff's retailers and distributors with the March 15, 2013 letter, and additionally have harassed said retailers and distributors with the improper and baseless threat of lawsuit both in person and over the phone.

192.     The foregoing conduct by Defendants, actionable on its own right, was intentional in that, *inter alia*, Defendants acted with the purpose of capturing Plaintiff's sales and interfering with Plaintiff's business relationships.

193.     Injury to Plaintiff's customer relationships and business has actually resulted from Defendants' statements and actions. Plaintiff has suffered and continues to suffer harm to its reputation and damages in terms of lost demand, sales, and profits for its products. Defendants have thus engaged in tortious interference with prospective economic advantage, and Plaintiff is accordingly entitled to recover its damages in the amount of lost sales and profits suffered due to said Defendants' interference and the amount in unjust enrichment derived by Defendants.

194.    Defendants' interference was tortious, malicious, outrageous, oppressive, fraudulent, made in bad faith, and in conscious disregard of ATHI's rights. Accordingly, in addition to general and compensatory damages, ATHI should be awarded exemplary and punitive damages sufficient to punish and make an example of said Defendants.

195.    Defendants' tortious interference with Plaintiff's prospective economic advantage will cause further irreparable harm if Defendants are not restrained by this Court from further violation of Plaintiff's rights. Plaintiff has no adequate remedy at law for all of the harm being caused to it, particularly in respect of the loss of Plaintiff's goodwill and market share being usurped by Defendants.

196.    Plaintiff is thus entitled to and hereby requests a temporary restraining order and immediate injunction as well as additional preliminary and permanent injunction restraining the Defendants' tortious interference with Plaintiff's contractual relations with its customers, including without limitation all of Defendants' efforts to contact Plaintiff's customers to threaten legal action for selling Plaintiff's tea products, Defendants' efforts to contact Plaintiff's customers in connection with any reference to the subject trademarks or trademark applications, and Defendants' further publication of ads containing any reference to said trademarks and trademark applications.

## COUNT XVIII – DECLARATORY RELIEF

## AGAINST EACH DEFENDANT

197.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 196 of this Complaint as though fully set forth herein.

198.    An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their rights and duties toward each other and, in particular, in respect of the rights in

and to the trademarks and applications identified above. Among other things, Plaintiff claims it owns the priority and exclusive rights in and to the subject trademarks in the market for tea generally and specifically for health purposes, while Defendants claim identical or similar rights.

199.    Plaintiff desires and requests a judicial determination of said rights and duties, including findings that: (a) Plaintiff owns the priority and exclusive rights in and to the subject trademarks and applications in the market for tea generally and specifically for health purposes; and (b) Defendants and each of them do not have any rights in and to the subject trademarks and applications.

200.    A judicial determination of these issues at this time will prevent a multiplicity of actions to adjudicate the same or related issues, and will result in the most efficient and equitable resolution of this dispute and the parties' rights and duties regarding the matters at issue in this Complaint.

## **PRAYER FOR RELIEF**

WHEREFORE, ATHI prays for a judgment, declarations, and other relief as follows:

1.      For a judgment and declaration that Plaintiff's copyright for its original product packaging has been and continues to be infringed by Defendants in violation of 17 U.S.C. § 501.

2.      For provisional, preliminary, and permanent injunctive relief against Defendants restraining and enjoining Defendants and each of them, and each of their respective agents, officers, directors, servants, and employees, and all persons acting under, in concert, or for them from manufacturing, reproducing, distributing, adapting, displaying, advertising, promoting, or offering for sale and/or selling any materials that are substantially similar to Plaintiff's copyrighted work, and ordering impoundment and destruction of all such materials in Defendants' possession or control.

3.      For actual damages and Defendant's profits, incomes, and other gains resulting from Defendants' infringement of Plaintiff's copyright in an amount to be determined at trial.

4.      For statutory damages pursuant to the Copyright Act for Defendants' infringement of Plaintiff's copyright.

5.      For attorneys' fees and costs incurred in prosecuting the present action by Plaintiff as a result of Defendants' infringement of Plaintiff's copyrights.

6.      For a judgment and declaration that Defendants have violated 18 U.S.C. § 2318 by knowingly trafficking in packaging which is a counterfeit of Plaintiff's copyrighted tea product packaging.

7.      For provisional, preliminary, and permanent injunctive relief against Defendants restraining and enjoining Defendants and each of them, and each of their respective agents, officers, directors, servants, and employees, and all persons acting under, in concert, or for them from engaging in further counterfeiting of Plaintiff's original product packaging, and ordering impoundment and destruction of counterfeit goods in Defendants' possession or control.

8.      For damages sustained by Plaintiff as a result of Defendants' counterfeiting and Defendants' gains, profits, and unjust enrichment obtained as a result of their counterfeiting, as well as statutory damages and attorneys' fees and costs from Defendants' counterfeiting.

9.      For a judgment and declaration that Plaintiff owns the priority and exclusive rights in and to the subject trademarks and applications in the market for tea generally and specifically for health purposes.

10.     For a judgment and declaration that Defendants and each of them do not have any rights in and to the subject trademarks and registrations therefore.

11.     For a judgment and declaration that Plaintiff's TIBETAN BAICAO TEA trademark, Horse Design Mark, and Scroll Design Mark have been and continue to be infringed by Defendants in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

12.     For a judgment and declaration that Defendants' use of marks identical to the TIBETAN BAICAO TEA mark, Chinese Characters Mark, and Scroll Design Mark, and marks substantially identical to the said marks, constitutes federal trademark counterfeiting in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

13.     For a judgment and declaration that Plaintiff's Chinese Characters Mark has been and continues to be infringed by Defendants in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

14.     For a judgment and declaration that Defendants' use of the TIBETAN BAICAO TEA mark, the mark consisting of Chinese characters translating to "TIBETAN BAICAO TEA," and marks substantially identical to the Horse Design Mark and Scroll Design Mark constitutes federal unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

15.     For a judgment and declaration that Defendants' March 15, 2013 letter and newspaper ads containing such letter constitute unlawful false designations of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

16.     For a judgment and declaration that Defendants' use of trade dress substantially identical to and confusingly similar to the protected trade dress product packaging of Plaintiff constitutes trade dress infringement and federal unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

17.     For a judgment and declaration that Defendants' use of the TIBETAN BAICAO TEA mark, the mark consisting of Chinese characters translating to "TIBETAN BAICAO TEA,"

and marks substantially identical to the Horse Design Mark and Scroll Design Mark violates New York common law trademark infringement and unfair competition laws, and further that Defendants' March 15, 2013 letter violates New York fraud, tortious interference, and commercial defamation and product disparagement laws.

18.     For provisional, preliminary, and permanent injunctive relief against Defendants restraining and enjoining Defendants and each of them, and each of their respective agents, officers, directors, servants, and employees, and all persons acting under, in concert, or for them from using the TIBETAN BAICAO TEA trademark and Chinese Characters Mark, together as a composite mark or individually, alone or in combination with other words or symbols, and the Horse Design Mark and Scroll Design Mark as trademarks, trade names, or otherwise to market, advertise, distribute, or identify Defendants' goods where such designation would create a likelihood of confusion, mistake, or deception with Plaintiff's marks, and in particular, from using said trademarks in any fashion in connection with any tea goods, and ordering seizure and destruction of any such infringing goods in Defendants' possession or control.

19.     For provisional, preliminary, and permanent injunctive relief against Defendants restraining and enjoining Defendants and each of them, and each of their respective agents, officers, directors, servants, and employees, and all persons acting under, in concert, or for them from engaging in further trademark counterfeiting of Plaintiff's federally registered marks, and ordering seizure and destruction of the Counterfeit Goods in Defendants' possession or control.

20.     For provisional, preliminary, and permanent injunctive relief against Defendants restraining and enjoining Defendants and each of them, and each of their respective agents, officers, directors, servants, and employees, and all persons acting under, in concert, or for them from using product packaging trade dress substantially identical to or confusingly similar to the

protected trade dress product packaging of Plaintiff, and ordering seizure and destruction of any such product packaging in Defendants' possession or control.

21.     For provisional, preliminary, and permanent injunctive relief against Defendants requiring Defendants and their agents, servants, and employees, and all persons acting under, in concert, or for them to publicly retract the March 15, 2013 letter and issue a public apology to ATHI and all persons or entities to which said letter was transmitted for Defendants' improper use and misattribution of ATHI's trademarks, and to turn over to ATHI all goods under the infringing TIBETAN BAICAO TEA and Chinese characters for "TIBETAN BAICAO TEA" marks for destruction or other reasonable disposal, as well as goods under marks substantially identical to the Horse Design Mark and Scroll Design mark, along with copies of all literature, advertising, labels, and other material in their possession bearing such infringing marks.

22.     For an accounting of all sales, revenues, income, or any other pecuniary gain obtained by Defendants or any of them in connection with any tea goods branded, sold, or otherwise marketed utilizing any of the subject trademarks.

23.     For Plaintiff's damages and all of Defendants' profits, revenues, income, or any other pecuniary gain obtained by Defendants or any of them from Defendants' trademark and trade dress infringement, trademark counterfeiting, false designation, unfair competition, and false advertising, as well as attorneys' fees and costs, treble damages, and statutory damages.

24.     For an order requiring Defendants to show cause, if they have any, why they should not be enjoined as set forth hereinabove throughout the pendency of this action and until such time as there is a full and final judgment in this matter.

25.     For a judgment directing that Defendants and each of them pay to Plaintiff the sum of any and all pecuniary damages sustained by Plaintiff as a result of any of the Defendant's

wrongful conduct as alleged hereinabove, including without limitation Plaintiff's costs and attorneys' fees incurred herein, as well as treble damages resulting from Defendants' trademark infringement, false designation, and unfair competition.

26.     For general, compensatory, and punitive damages arising from Plaintiff's economic losses sustained as a result of Defendants' tortious interference with contract and prospective economic advantage, fraud, and commercial defamation and product disparagement, along with Defendants' ill-gotten gains obtained from such unlawful activities, and injunctive relief restraining Defendants from engaging in further acts of interference with Plaintiff's customer orders, contracts, and business relations.

27.     For a judgment and order requiring Defendants to pay such other damages and further relief as the Court deems fit under the circumstances, or as may be sought by Plaintiff according to proof at trial or otherwise during this litigation.

28.     For a judgment and order sustaining each of the causes of actions set forth herein against Defendants.

29.     For attorneys' fees, costs, and expenses as allowed by law.

30.     For any and all other relief as the Court deems just and reasonable.


Dated: May 17, 2013                    Respectfully submitted,


                                       By: _____
                                       Philip Abramowitz, Esq.
                                       KLOSS, STENGER & LOTEMPIO
                                       *Attorneys for Plaintiff,*
                                       *American Tibetan Health Institute, Inc.*
                                       69 Delaware Avenue, Suite 1003
                                       Buffalo, New York 14202
                                       Telephone: (716) 853-1111
                                       Email: office@klosslaw.com

David W. Kloss, Esq.
KLOSS, STENGER & LOTEMPIO
69 Delaware Avenue, Suite 1003
Buffalo, New York 14202
Telephone: (716) 853-1111
Email: dwkloss@klosslaw.com

Of Counsel to:

Otto O. Lee, Esq.
INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113
Telephone: (408) 286-8933
Facsimile: (408) 286-8932
Email: olee@iplg.com